ST. JAMES' CHURCH,

*vs.*   .

JAMES WALKER, administrator, *c. t. a.*, of SAMUEL WALKER, deceased.

*New Castle, April T.* 1825.

A nuncupative will, made according to the law of the testator's domicil at the time of his death, will pass personal estate situated in a foreign State or country, although not executed according to the formalities required by the laws of that State or country.

But, to give effect, in Delaware, to a foreign nuncupative will, a probate thereof must be made in the county where the personal property is situated,—the formalities of such probate to be according to the law of the domicil of the testator, and not such as are required by the statute of this State.

In the present case, a nuncupative will executed in the State of Pennsylvania, according to the laws of that State, but not proved in this State, *held* not sufficient to pass a legacy to a religious corporation within this State, to be paid out of assets situated in this State.

The paper signed by the witnesses and produced as a nuncupative will in this case, *held* not sufficient to be admitted to probate as such, because the words spoken by the decedent did not show an *animus testandi,*— also, because it did not appear that the persons signing the paper were desired by the testator to attest it as his will.

BILL FOR A LEGACY.—NUNCUPATIVE WILL.—The complainant was a religious society, duly incorporated under the laws of the State of Delaware, by the name of " St. James' Church," and had the legal capacity to take by gift, devise, bequest, &c.   Samuel Walker, a member of the congregation, residing in Chester County in the State of Pennsylvania, on the 7th of November, 1821, made a nuncupative will, in the presence of three witnesses, and thereby bequeathed to the complainant a legacy of four hundred dollars.   Walker died on the same day, in Chester

County aforesaid, and on the 11th of November following, the witnesses to the nuncupative will reduced the same to writing.

The will was proved, in due form of law, on the 10th of December, 1821, before the Register of Wills for Chester County; and letters of administration *cum testamento annexo* were granted to James Walker, who thereupon took upon himself the execution of the will.

The testator, Samuel Walker, died possessed of a considerable personal estate, which, at the time of his decease, was in New Castle County, Delaware. The administrator, James Walker, also took letters of administration from the Register of Wills for New Castle County. No probate of the will was made in New Castle County; but administration was granted upon the filing of a copy of the probate made in Pennsylvania.

The bill set forth the above stated facts, alleging that the will contained a good and valid bequest of the said sum of four hundred dollars to the complainant, and that the testator died possessed of assets to pay his funeral expenses, debts, and the said legacy. It prayed for an account of the estate, and that the administrator should be decreed to pay the legacy, according to the bequest contained in the nuncupative will.

Annexed to the bill was a copy of the nuncupative will, certified on the 13th of May, 1824, under the hand and seal of office of D. Heister, Register of Wills for Chester County, as follows :

" We, the undersigned, are ready and willing to depose to the following facts. We, John McIntire, James Walker and Thomas Kay, being in the house of James Walker, and by the bed-side of Samuel Walker, now deceased, on the seventh day of this instant, ( November, 1821,) the above named John McIntire, asked the above named Samuel Walker, (now deceased,)—'Samuel do you know

this man?' to which he replied; 'not without it is Thomas Kay.' The now deceased then observed, 'I wish to leave a certain sum to that church.' The above named John McIntire then asked; 'to what church?' He replied, 'to St. James' Church, the church I belong to.' He was then asked, 'what sum?' he answered, 'three or four hundred dollars.' He was then asked, 'which of those sums?' He replied, 'four hundred dollars,—not to exceed four hundred dollars.' That these declarations were made by the above named Samuel Walker, while in his right mind, we are fully satisfied.

As witness our hands and seals, this eleventh day of November, in the year of our Lord, one thousand eight hundred and twenty-one."

(Signed,)

John McIntire,

Thomas Kay,

James Walker, (Tanner.)

Chester County, ss.

Be it remembered, that on the tenth day of December, A. D. 1821, personally appeared John McIntire, Thomas Kay, and James Walker, (tanner,) before the subscriber, being Register for the probate of wills and granting letters of administration in and for the said county, in the commonwealth of Pennsylvania, who, being duly sworn according to law, do say, that they were personally present with Samuel Walker at the time of his last sickness, and that about six hours before his decease they did, each of them respectively, hear the said Samuel Walker pronounce and utter the words hereunto annexed, purporting to be the last will and testament (in the nature of a nuncupative will) of the said Samuel Walker, and the said words to have been spoken by him on the seventh day of November, A. D., 1821, at the house of James Walker, where the deceased had resided

about eight or nine years, and the same words were committed to writing, within four days after they were uttered, and to which their names are respectively affixed ; and that the words contained in the annexed paper were all the words made use of by the said Samuel Walker relative to the disposal of his estate and property, and that at the time he pronounced them he was of a sound, disposing mind and memory, and every way capable of making a will, as they verily believe.

(Signed,)

*Sworn and subscribed this* 10*th*       Jno. McIntire,
*day of December,* 1821, *before*       Thomas Kay,

    D. Heister, Reg'r.        James Walker, (Tanner.)

Be it remembered, that on the tenth day of December, A. D., 1821, the last will and testament (nuncupative) of Samuel Walker was proved and approved, in due form of law, and letters of administration *cum testamento annexo*, were granted to James Walker, who was solemnly sworn to exhibit a true and perfect inventory of the deceased's estate into the Register's office, at West Chester, on or before the tenth day of January next, and to settle the account of his administration within one year from this time, or when thereunto legally required.

Given under my hand and the seal of said office.

D. Heister, Reg'r.

The answer of the defendant admitted that the complainant had been duly incorporated under the laws of the State of Delaware, as in the bill alleged. It also admitted the facts set forth in the bill touching the death of Samuel Walker in Chester county, Pennsylvania, and the making by him of a certain will, in the nature of a nuncupative will, the probate of the same, and the granting of letters of administration to the defendant, both in Chester county, Pennsylvania, and in New Castle county,

Delaware. The answer further admitted that the testator died possessed of personal property in New Castle county, but alleged that the defendant was unable to set out the amount thereof, inasmuch as a large part consisted of outstanding debts, and other parts thereof were dependent, for their recovery, upon the result of a suit, now depending, which had been instituted by the defendant. And, for greater certainty as to the contents of said will, the defendant referred to the copy thereof annexed to the complainant's bill. But whether the said paper, purporting to be a will, was a good nuncupative will, under the law of this State, and whether the bequest therein contained was good and valid in law and available for the complainant, the defendant did not know, but craved the direction of the Court as to the same.

The cause was submitted to the Chancellor, at the April Term, 1825, upon the bill and answer, without the taking of proofs, and without argument.

*Rogers*, for the complainant.

*Read, Jr.*, for the defendant.

RIDGELY, CHANCELLOR.—It appears that Samuel Walker, the testator, at the time when the said nuncupative will was made, resided in Pennsylvania, at the house of James Walker, where he had resided about eight or nine years. The words were spoken in his last sickness, about six hours before his death, and were committed to writing within four days after they were uttered. The will was proved in Chester county, in the State of Pennsylvania, according to the certificate of D. Hiester, Register for the probate of wills in that county.

The State of Pennsylvania being the domicil of the testator at the time of his death, and for several years before, if the will is good according to the laws of that

State the personal property mentioned in it may pass according to the bequest, upon a proper probate being made, without regard to the law of this State, where such personal property may be, as to the formality of the will. The *lex loci* of the testator, and not the *lex loci rei sitae,* both in wills and successions *ab intestato,* must govern. Lord Loughborough, in delivering the opinion of the Court in *Sill vs. Warwick,* 1 *H. Blk.* 665, 690, says, " it is a clear " proposition, not only of the law of England, but of " every country in the world where law has the semblance " of science, that personal property has no locality. The " meaning of that is not that personal property has no " visible locality, but that it is subject to that law which " governs the person of the owner, with respect to the " disposition of it. With respect to the transmission of " it, either by succession or by the act of the party, it " follows the law of the person. The owner in any " country may dispose of his personal property. If he " dies it is not the law of the country in which the prop- " erty is, but the law of the country of which he was a " subject, that will regulate the succession." And so in *Bruce vs. Bruce,* 2 *Bos. & Pul.* 229, it was decided that the actual *situs* of the goods had no influence. And in *Pipon vs. Pipon, Ambler,* 25, a similar doctrine was held. And in *Desesbats vs. Berquier,* 1 *Binn. R.* 336, the Supreme Court of Pennsylvania held that a will of personal property must be executed according to the law of the testator's domicil at the time of his death. If it is void by that law it will not pass personal property in a foreign country, although it is executed with all the formality required by the laws of that country.

It therefore follows that a will of personal property made in Pennsylvania, although the property may be in this State, must operate according to the laws of that State; but then the question will occur, whether the probate made in Pennsylvania, of a nuncupative will, is sufficient to pass the personal property in this State.

A probate, until it is annulled or reversed, is conclusive; and no evidence can be received against it. It cannot be set aside in any court of law or equity, on any collateral matter; but, if it is to be questioned, it must be upon an appeal. *Gilb. Law of Evid.* 74; 1 *Lev.* 235, *Noel vs. Wells*: 4 *Co. Rep.* 94, *Bunting's case*: 1 *Salk. R.* 290, *Blackman's case*: 1 *Atk.* 630: 2 *Atk.* 324, 878: 1 *P. Wms.* 388: 2 *P. Wms.* 287: 1 *Ves. Sr.* 119, 284: 2 *Vern.* 8: *Ambler*, 756: 4 *Ves. Jr.* 23: *Cowper*, 315. Even if fraud in obtaining the will is charged, that is not a sufficient equitable ground to impeach the probate; for the parties may resort to the Ecclesiastical Court, which is competent to determine upon the question of fraud. *Mitford's Pleadings*, 206.

But the probate of this nuncupative will in Pennsylvania is not sufficient to give it any effect in this State; and until probate is made here, the will cannot be considered to pass any property here. 4 *Burns' Ecc. Law*, 187.

In England a will of personal property, if there be *bona notabilia* both in the province of Canterbury and in the province of York, must be proved either before both metropolitans, if within each of their jurisdictions there be *bona notabilia* in divers dioceses,—or else, if there be not so in any of the places, then before the particular bishops in those several dioceses where the goods are. Or, if within the one jurisdiction metropolitan the testator had goods in divers dioceses, and in the other but in one diocese,—then, in the one place is the will to be proved before the archbishop, and in the other place before the particular bishop. 4 *Burns' Ecc. Law*, 183. It is evident from these cases that where the deceased had *bona notabilia*, or chattels to the value of a hundred shillings, in the provinces of Canterbury and York respectively, that the will must be proved in both; for, as the bishops were themselves originally the administrators to all intestates in their own dioceses, and as the present administrators are in effect no other than their substitutes, it was impossible for

the bishops, or those who acted under them, to collect any goods of the deceased, other than such as lay in their own dioceses beyond which their episcopal authority extended not. And the probate of wills naturally follows the power of granting administration, in order to satisfy the ordinary that the deceased has, in a legal manner, by appointing his own executor, excluded him and his officers from the privilege of administering the effects. 2 *Blk. Com.* 508–9–10 : 2 *Lev.* 86 . *Hard.* 216 : 1 *Salk.* 39, *p.* 8 : 2 *Bac. Abr. Executor,* 399, (*E.*)

In the year 1700, while our Government was united with that of Pennsylvania, all wills in writing, whereby real estate within the province or territory was devised, were, by an Act of Assembly (1 *Laws of Del., App.* 29) declared to be good and authentic in law, whether the said wills were made within or out of the province or territory, *provided* the same were legally proved within this province or territory within six months after the death of the testator ; or within eighteen months, if the devisee should live out of this Government. And all nuncupative wills, made within this province or territory and attested according to that Act, were to be proved in the Register's office " in this province or territory." Afterward, in the year 1706, by another Act of Assembly, all wills in writing of real estate, whether made within or without this Government, "legally proved within this Government, or in the chancery in England," and nuncupative wills of goods and chattels attested according to that Act "and proved in the Register's office in this Government" within a limited time, were declared to be valid in law. See 1 *Laws of Del.. App.* 53. The last of these Acts was made after our separation from the Government of Pennsylvania.

These Acts of Assembly continued in force until the year 1753, when the present Act concerning written and nuncupative wills was passed. And they, I apprehend, gave rise to the practice and legalized the probate of a

will, or the granting letters of administration, in a single county, so that such probate or letters of administration shall operate and be effectual all over the State, without a probate or obtaining letters of administration in each county where there may be *bona notabilia*; and in the Act for establishing an Orphans' Court (1 *Laws of Del.*, 87) the Register is spoken of as having "the power of probate of wills and granting letters of administration in this Government."

In England it is not sufficient that a will of personal property be proved abroad. It must be proved there, in order to give it validity, if there be personal estate there. In *Jauncey vs. Sealey,* 1 *Vern.* 397, the plaintiff, as administrator of J. S., who died at Naples, brought his bill to have a discovery of the intestate's personal estate. The defendant pleaded that the supposed intestate had made a nuncupative will and made the defendant executor ; and that he, the defendant, had proved the will, according to the custom of the country where the testator died ; and he denied that the testator had left any estate but what was at Naples. The court allowed the plea, and said that the testator having left no estate in England, it was not necessary the will should be proved there ; no more than if a man had died and left an estate in Scotland. See *Mitfords' Pleadings,* 206, where the same case is referred to, according to which it is clearly implied that if the testator had left goods in England, the will must have been proved there. In *Hunter vs. Potts,* 4 *T. R.* 182, *Law,* one of the counsel, in arguing that personal property is regulated, not by the law of the country in which it is situated, but by that of the owner's domicil, says, "upon this principle a probate would be granted here upon the foot of a foreign probate in the case of a foreigner who died leaving property in this country." And in *Lee v. The Bank of England,* 8 *Ves. Jr.* 44, the master of the Rolls, in the case of a will made in America which the executor would not prove in Eng-

land, but which had been proved in this country, considered the representatives in America not to be the legal representatives in England,—that the laws of England required probate to be made there and would take no notice of a foreign administration.  In *Desesbats vs. Berquier*, 1 *Binn. R.* 336, a will made by Jean Thirl, an inhabitant of the Island of St. Domingo, was proved in Pennsylvania.  That probate was annulled, because the will was not executed with the formality required by the law of St. Domingo, the testator's domicil, and was therefore not valid ; but the will had been necessarily proved in Pennsylvania at first, on the supposition that it was good and effectual.  And in *Worrell vs. Dickey*, 1 *Johns. Ch. Rep.* 153, Chancellor Kent says, " it is well settled " that we cannot take notice of letters testamentary or of administration granted abroad, and that they give no authority to sue here.  This is not only the law of England but it has been generally adopted in this country."

As connected with this subject, it may be remarked that letters of administration granted in one State or Government are not sufficient to maintain an action in another, unless it is in virtue of some statute or positive law.  In our own State the terms prescribed by " an Act directing the priority of payment of debts of persons dying within this Government" (1 *Laws of Del.* 81) must be complied with ; otherwise, letters of administration obtained out of the State are not sufficient for maintaining an action by a foreign administrator.  So, in Pennsylvania letters of administration granted under seal in a sister State are sufficient to maintain an action, under an Act of Assembly passed in the year 1705.  1 *Binn. R.* 63.  But letters of administration granted in England were adjudged not sufficient in Pennsylvania, because the Statute of that State did not extend to such letters of administration.  1 *Dall. R.* 456.  And the same doctrine is held in the District of Columbia.  1 *Cranch's R.* 259.  So in Eng-

land, if a man dies intestate and has goods in England and Ireland administration must be granted in both countries.

Our own statutes have prescribed the manner in which written wills, both as to land and personal property, and nuncupative wills as to personal property, shall be executed and proved ; and they contain particular provisions in relation to written wills made by persons residing in certain countries out of this Government and there proved ; but they are entirely silent as to nuncupative wills, and do not provide that copies and probates, made in any other State or Government, shall be received here as good and valid. This omission of nuncupative wills made and proved abroad clearly demonstrates that the Legislature intended to leave them on their former footing. And the provision in favor of certain written wills equally proves that, without this statute, probate of them must be made within this State before they can here avail. It is the clear law of the State that neither a will, nor a probate made abroad, is available in this State until the will be here proved ; except in the cases provided for in an Act concerning wills made by persons residing out of this Government. 1 *Laws of Del.* 448.

Upon the principle that personal property must follow the domicil of the testator, if this will has been made according to the laws of the State in which the testator was domiciled at his decease, even though all the formality required by our Act of Assembly has not been observed, it is sufficient to pass personal estate ; but in order to give it effect the probate must be made in New Castle county, where such personal property is situated,—not, indeed, according to the requisites of our statute, but according to the proof required by the law of the domicil of the testator. If the executor will not prove the will he may be cited by the Register, and if that cannot be effected it will be a *casus omissus*, and must be provided for by the Legislature of the State or by the Congress of the United States.

I am of opinion, therefore, that because this nuncupative will of Samuel Walker has not been proved in New Castle county in this State it conveys no interest whatever to St. James' Church in the supposed legacy of four hundred dollars.

But, even if this will had been brought for probate in New Castle county, I do not think that it could have been properly proved according to the law of Pennsylvania, or of this State, because Samuel Walker seemed not to have had, according to the words spoken, the *animus testandi*,—a disposing mind ; but the words uttered were elicited from him by the witnesses, or some of them.

Another objection that might be made to a probate of this paper is, that the persons attesting it were not desired by Samuel Walker to witness that such was his will, nor did he use any words to that effect. Altogether, there is so little of design in the paper like making a will that it is probable it never could, if opposed, be proved as a nuncupative will.

Bill dismissed.