PERRY T. WALKER, SUSAN BURFORD, AILSIE ANN JEFFERSON, MARY E. STURNS AND ANNABELLA ROSS, LEGATEES under the last will and testament of DANIEL CALDWELL, deceased,

*vs.*

DANIEL CALDWELL, EXECUTOR OF DANIEL CALDWELL, deceased.

*New Castle, Sept. T.* 1896.

By will duly proved, D. C. bequeathed unto his two sisters "all of the interest of my money that is in the banks in Boston, Mass., and the entire principal of said money * * * to their children." At the time of his death he had personal deposits in three such banks, and in one of them an additional deposit to the credit of D. C. "Trustee for" R. C. No such person as R. C. or any legal representatives under him "had ever come forward to ask or demand the said trust fund, and there had been found no proof of his existence." *Held*, on demurrer:—

1. That the Court of Chancery has jurisdiction of a suit against an executor for a legacy.

2. That R. C. was a necessary party and, therefore, the bill was defective for want of proper parties.

3. That in order that property should escheat to the State it is necessary that the last owner should die intestate, and without heirs, or any known kindred, and not only was there no such affirmative allegation, but it would be inconsistent with the whole tenor of the bill and its averments with respect to R. C.

The Court of Chancery, in this State, has jurisdiction of suits for legacies against an executor, which is not affected by the statutes authorizing the legatee to sue at law. The recovery at law is merely concurrent and does not affect the common law jurisdiction in equity.

The Act of 1764 and that of 1829 authorizing suits at law for the recovery of legacies, did no more than provide a concurrent remedy, in addition to that which existed in the Courts of Equity in the colonial period and was subsequently adopted by the State, when the Court of Chancery was created by the Constitution of 1792 and continued by the Constitutions of 1831 and 1897.

BILL IN EQUITY BY LEGATEES AGAINST AN EXECUTOR. The allegations of the bill, which was filed April 24, 1895, were as follows:

Daniel Caldwell, late of Wilmington, died November 7, 1891, having first made his last will, which was duly proved and recorded in the office of the Register of Wills for New Castle County in Will Record N, Vol. 2, page 411. He specifically bequeathed to the complainants certain moneys theretofore deposited in several banks in the City of Boston, Mass., in these words:

"Item. I give and bequeath unto my (2) two sisters Susan and Betsy, all of the interest of my money that is in the Banks in Boston, Mass. and the entire principal of said money I give and bequeath to their children."

The money so deposited was in the following banks: In his own name, individually, in the 5c Savings Bank, Suffolk Savings Bank and Provident Institution for Savings. In the name of Daniel Caldwell, Trustee for Richard Caldwell in the Provident Institution for Savings.

The money standing in the name of Daniel Caldwell, Trustee for Richard Caldwell amounted to $1666.76, which was received by the respondent and by him deposited at interest in the Equitable Guarantee and Trust Company of Wilmington in his name as executor, where it still remained at interest. A schedule of the deposits of this fund in the Provident Institution for Savings was annexed to the bill and showed that the first deposit was made November 9, 1842, for $223, and the second November 16, 1842, for $67, and the third and last November 30, 1842 for $200. After the additions of interest and the deduction of the amounts paid from time to time, there remained the said balance of $1666.76, which was paid in full to the respondent as executor December 7, 1892.

It was alleged that since the first deposit on November 9, 1842, there was no proof or record that the money so deposited or any interest thereon were ever paid to Richard Caldwell, or applied for his use and benefit. And since that time

neither Richard Caldwell, the *cestui que trust*, nor anyone having a just and legal claim under him, had ever come forward to ask or demand the said trust fund, and there had been found no proof of his existence.

The complainants, Anabella Ross and Mary E. Sturms, were children of the testator's sister Betsy, and, under the laws of the State of Delaware, the distributees of her intestate property; the complainants, Susan Burford, Ailsie Ann Jefferson and Perry T. Walker were children of the testator's sister Susan, and, by the laws of Delaware, the distributees of her intestate property. James H. Walker, a son of the said Susan, was living at the time of the death of Daniel Caldwell and was, therefore, one of his legatees, but he had since died and by will named the complainant, Susan Burford, his sister, as his sole legatee.

The respondent was named as sole executor of the testator Daniel Caldwell, and he, as executor, had received and paid over to the complainants, under the terms of the will, all the moneys deposited in said banks in Boston, except those deposited in the Provident Institution for Savings in the name of Daniel Caldwell, Trustee for Richard Caldwell.

The complainants frequently requested the payment by the respondent of the moneys so deposited in the name of Daniel Caldwell, Trustee for Richard Caldwell, but such payment has been and still is refused.

In addition to the prayers for answer, subpoena and further relief, the bill prays "that the said Daniel Caldwell, Executor as aforesaid, be decreed to pay over unto your orator and oratrices the just and full sum of said moneys so coming into his hands as aforesaid, together with all interest thereon which has accrued since it has come into his possession."

To this bill the respondent, on February 27, 1896, demurred, alleging for cause,

(1) That the complainants had a plain and adequate remedy at law.

(2) That it appears by the bill that Richard Caldwell, the *cestui que trust* of Daniel Caldwell, deceased, is a necessary

party to the bill, but neither he, nor any personal representative, is named as a party.

(3) That the complainants have not made or stated such a case as entitled them, or any of them, to any relief with respect to the matters contained in the bill.

The case was heard on demurrer at the September Term, 1896.

*Charles W. Smith,* for the demurrants.

(1) Complainants have failed to join as parties to this suit, the *cestui que trust,* Richard Caldwell, or his legal representatives. This is a case where the *cestui que trust* is an indispensable party; the executor of the trustee having no knowledge of the trust, cannot protect the interests of his *cestui que trust.* 1 *Dan. Ch. Pl. & Pr. (Perkins Ed.)* 292, 303; 6 *Am. & Eng. Enc. L. & Eq.,* 734, 750; *Hewett vs. Adams,* 50 *Me.* 271, 281; *VanDoren vs. Robinson,* 16 *N. J. Eq.* 256; *Beals vs. Cobb.* 51 *Me.* 349; 350; *Traders Bank vs. Campbell,* 14 *Wall.* 87, 94.

The rule in *Farmers' Bank vs. Polk,* cited for complainant must be adopted with limitations. It would be inequitable to such an extent as to shock the conscience of the Court to carry it to the extent of permitting a decree to be entered against one, who was without the jurisdiction of the Court and does not appear, merely by joining as defendant a third party, having only a collateral or contingent interest in the subject matter, but who is also a necessary party with respect to his own interest.

(2) The trust involved in this case will not bring it within the jurisdiction of a court of equity. The basis of complainants' claim is entirely legal, and is inconsistent with the existence of the trust. 1 *Pom. Eq. Jur.,* secs. 130. 133, *and note on p.* 378; *Chipman vs. Montgomery,* 63 *N. Y.* 221, 231, 232; *Whitman vs. Fisher,* 74 *Ill.* 147; *Hipp vs. Babin,* 19 *How.* 271, 277, 278.

The fact that the defendant in this suit can come into equity to ask advice of the Court concerning the trust does not *per se* give the complainants a standing in equity. A

Argument for demurrants.

person sued or threatened with suit by two or more persons, touching the same subject matter, may compel them to interplead in equity, although the causes of action against him may be purely legal.

(3) The fact that complainants sue to recover a legacy will not give them standing in this Court, in the absence of special circumstances, as fraud, accounting, waste, &c.

In England and originally in this country, equity had jurisdiction of administration suits, the recovery of legacies, distributive shares, &c. In America the enactment of statutory remedies, and the establishment of statutory courts of probate has either taken away this jurisdiction of equity, or rendered it practically obsolete. It seems now, therefore, that in all the States of the Union (with one or two exceptions) the jurisdiction of equity over this class of cases is either expressly denied, or, if still concurrent to a limited extent, lying dormant as it were, it will not be exercised by courts of equity unless rendered necessary by some of the special heads of equity jurisprudence, as fraud, &c. This is in accordance with the spirit and genius of equity jurisprudence, which is, to assume jurisdiction only when there is no plain, adequate, and complete remedy at law. The facts of the case in hand show no occasion for the intervention of a court of equity. *Rev. Code* (1893) 704, 680, 863; 1 *Pom. Eq. Jur. secs.* 156, 346–352, especially *sec.* 349; 1 *Sto. Eq. Jur. sec.* 616; *Chipman vs. Montgomery*, 63 *N. Y.* 221, 235, 236; *Heustis vs. Johnson*, 84 *Ill.* 61; *Pratt vs. Longworth's Exrs.*, 27 *Ohio St.* 159, 186; *Beeson Admr. vs. Elliott*, 1 *Del. Ch.* 368, 386.

(4) Complainants have no cause of action whatever, since personal property, which is the subject of a trust, will, on the death of the *cestui que trust*, intestate and without next of kin, escheat to the State. 1 *Lewin on Trusts*, (1st *Am. &* 8th *Eng. Ed.*) *285; 1 *Perry on Trusts* (4th *Ed.*) *secs.* 434, 436, 437; 2 *Pom. Eq. Jur.* 637, 538; *Burgess vs. Wheate*, 1 *Eden* 177; *Matthew vs. Ward*, 10 *Gill & J.* 292; *Croxell vs. Sherred*, 5 *Wall.* 268, 281; *Read vs. Steadham*, 26 *Beav.* 495; *Taylor vs. Haygarth*, 14 *Sim.* 8.

The last two citations are cases where there was a failure of the next of kin of the author of the trust, but the question involved is exactly the same as in the case in hand, namely, what is the devolution of personal property which is the subject of a trust, when there is no *cestui que trust*.

*Thomas F. Bayard, Jr.*, for complainant.

The first objection raised by the demurrer is that there is an adequate remedy at law.

Inasmuch as the executor was entitled, and it was his duty, to come into this Court to pray for instructions as to the disposition of the fund in question, the complainants, as legatees, are equally entitled to come here and ask for an adjudication of the matter and a definition of their rights in the cause.

A bill in equity will lie for a legacy and for discovery of assets. *Toller, Ex.* 479.

This bill is filed for the purpose of discovering whether or no the fund in question is such an asset of the testator's estate as will be applicable to the bequests made therein to the complainants.

The facts as charged in the bill must be taken as true for the purpose of this argument. *Sto. Eq. Pl.*, sec. 452; *Williams vs. Steward*, 3 *Mer. Ch.* 472.

The underlying question is whether or no there are any assets in the hands of the executor, and the determination of it lies solely within the province of a court of equity. 2 *Wms., Ex.* *1718.

(2) The general rule is that the *cestui que trust* must be made a party to the suit.

But inasmuch as the facts charged in the bill are taken to be true, and the *cestui que trust* and his representatives are unknown, it is sufficient that the trustee, or, in this case, his executor is made party. *Shaw et al. vs. Norfolk*, 1 *Gray* 171.

Besides the executor now has this fund in his hands, and it was delivered to him by order of the Court in Massachusetts, where the money was first deposited. 2 *Wms., Ex.* *1729.

The trustees may maintain a suit either as plaintiff or defendant. *Mitf. Eq. Pl.* (3d Ed.) 142; *Meux vs. Maltby*, 2 *Swans.* 277. And if a bill is brought adversely to a trust by a third person, it will be sufficient to make the trustees parties. *Sto. Eq. Pl.*, *sec.* 216, see also *sec.* 214, *anon.* 1 *Vern.* 261.

There is no precise rule as to the necessary parties, but it depends upon the discretion of the Court. *Wiser vs. Blackley*, 1 *Johns. Ch.* 437; *Newlin vs. Champion*, 1 *Ves.* 105; *Peacock vs. Monk*, 1 *Ves.* 127, 131.

If the bill seeks the discovery of parties interested and charges that they are unknown, a demurrer for want of proper parties will not lie. *Mitf. Eq. Pl.* (3d Ed.) 146–7; *Bowyer vs. Covert*, 1 *Vern.* 95.

The rule is most broadly laid down in our own Court by Chancellor Ridgely. *Farmers' Bank vs. Polk*, 1 *Del. Ch.* 167, 174.

(3) This bill is primarily for the purpose of making the executor pay over the legacies. It also seeks to declare that the title to the fund in question was wholly in the testator in his own right, and, lastly, to decree it to be a part of the money specifically decreed to the legatees, who are the complainants in this cause.

The case is properly within the jurisdiction of a court of equity over trustees. 1 *Pom. Eq. Jur.* 730. It is true that there is now no trust, but there was a trust and upon that hinges this case. *Chipman vs. Montgomery.* 63 *N.Y.* 221, 231–2.

The very contention of the deed establishes the equitable jurisdiction by raising the question of the necessity of joining the *cestui que trust* as a party.

Whether it be decided that the *cestui que trust* is or is not a necessary party, the trust is established, and, therefore, the Court has jurisdiction.

If then there is a trust, the principle must be applied that the trust repudiated for a great length of time will be defeated. *Perkins vs. Cartmell's Admr.*, 4 *Harring.* 270; *Hill on Trustees* *168.

The period of limitation, in conformity to the statute 21 Jac. 1, is not confined to the case of mortgagor or mortgagee, but extends to all equitable estates or equitable title or claims to land where an adverse possession of twenty years has been acquiesced in; and where, had it been the case of a legal estate, the party claiming must have sued in a court of law within that period. *Perkins vs. Cartmell's Admr., supra.*

(4) The question of escheat cannot arise on demurrer, unless specially raised by it. 1 *Lew. Tr.* *285.

Besides, in order that the property should escheat to the estate, it is essential that the last owner should die intestate. *Rev. Code* (1893) 620.

THE CHANCELLOR:—

The bill was filed by the legatees under the will of Daniel Caldwell, deceased, for the purpose of obtaining a decree of this Court, requiring Daniel Caldwell, executor of the said Daniel Caldwell, to pay over to them certain moneys which had been deposited in 1842 by the said testator in the Provident Institution for Savings, in the City of Boston, in the name of Daniel Caldwell, trustee for Richard Caldwell, which, with interest, amounted to $1666.76, when it came into the hands of Daniel Caldwell the said executor.

The respondent filed his demurrer to the bill, stating as his first cause of demurrer that the complainants had a plain and adequate remedy at law; it being urged by counsel for the respondents that the enactment of statutory remedies in America and the establishment of statutory courts of probate, have either taken away the jurisdiction of courts of equity over administration suits, or rendered them practically obsolete, so that the jurisdiction will not be exercised unless rendered necessary by some of the special heads of equity jurisprudence, such as fraud, etc.

It will not be necessary to go outside of our own State to find decisive authority for the determination of the questions raised by this first ground of demurrer. It is of course, not denied by counsel for the respondent that at common law it was a very important part of the exclusive jurisdiction

of the English Court of Chancery to hear and determine suits for the recovery of legacies and for distributive shares of the personal property of an intestate, and when the jurisdiction of the High Court of Chancery in Great Britain was conferred upon the Colonial Courts of Common Pleas by our early colonial statutes, this became an important part of their exclusive jurisdiction, and so continued to be until jurisdiction was given by Act of March 31, 1764, 1 *Del. Laws*, 408, to the Courts of Common Law, to entertain a suit against an executor for a legacy due.

This act, passed during the term of John Penn as Lieutenant Governor of the Colony, clearly recognized the existing jurisdiction of the Court of Chancery, reciting that "Whereas the proceedings in the Courts of Chancery, within this government, for the recovery of legacies are tedious and expensive." It then enacted that, "from and after the publication of this Act, it shall and may be lawful for any person or persons, to whom any legacy, or bequest of any sum or sums of money, or other goods or chattels, have been, or may be, made, by the last will and testament of any other person or persons legally made, to commence, sue and prosecute, an action of debt, detinue or account render, as the case may require, for such legacy, after it becomes due, in any of the Courts of Common Pleas within this government."

There was no further legislation until a general statute for the regulation of probate and administration was passed February 16, 1829, entitled "An Act Concerning the Probate of Wills and the Administration of Personal Estates of Deceased Persons." 7 *Del. Laws*, 465, 483, *ch.* 28, *sec.* 16, which provided that an action of assumpsit might be maintained against an executor or administrator for a legacy or distributive share.

The Act of 1764 is found in the Digest of 1829, p. 370, where it is provided that the legatee may sue in "debt, detinue or account render, as the case may require." And the Act of 1829, to be found on page 217 of the same Digest, provides in *sec.* 16, p. 228, that: "An action of assumpsit may be maintained against an executor or administrator for

.a legacy or distributive share." The latter statute does not refer to the former, and it presumably left it open at that time to the suitor to adopt any one of the forms of action mentioned in both acts. This seems to be a necessary conclusion from the language of the statute providing for the publication of the Digest of 1829, and the statement of the preface, in which Judge Hall, its editor, states "that this edition shall contain the law, as it stands in force upon our Acts of Assembly."

In the Revised Code of 1852, the action of assumpsit was alone designated as the remedy at law in this class of cases. *Rev. Code* (1893) 680, *sec.* 40.

In the act of 1829 a legacy either directly or indirectly the subject of a trust was excluded from the grant of jurisdiction; but there was no such exception noted in the Act of 1764; doubtless it was deemed unnecessary.

It is, of course, obvious that the question here touched upon as to what action at law will lie, cannot arise in this Court and is here referred to only as part of the historical statement of the legislation on the subject.

Can it be successfully contended that either the Act of 1764 or the Act of 1829 does more than provide a concurrent remedy for the recovery of a legacy in addition to that which had always existed, which, as above stated, was established in the early colonial period, and was subsequently adopted by the State, when the present Court of Chancery was created by the Constitution of 1792, and continued by the Constitutions of 1832 and 1897? Clearly not.

It might be sufficient to rest alone upon the language of the statutes of 1764 and 1829, which plainly shows that they only established a concurrent remedy, intending to make available a more speedy and easy method of recovering a legacy, without interfering with the right of a suitor to proceed by bill in equity if for any reason he were advised so to do. With the same end in view, the proceeding by *scire facias* on a mortgage was provided, and is generally used, although not interfering with the right of a mortgagee, at his

option to file a bill in equity for foreclosure. *Giles vs. Lewis,* 4 *Del. Ch.* 51; *Fox vs. Wharton,* 5 *id.* 200.

It may be not inappropriate, however, to review the series of cases in our Court of Chancery relating to this subject.

At the time of the passage of the act of 1829, the jurisdiction in equity to make a decree against an executor for the payment of a legacy at suit of the legatee was habitually exercised and was unquestioned. It was not considered to be affected by the statute of 1764 in the colonial period, which was recognized as the law of the State in *Killen, et al. vs. Adams, Ex'r.,* 1 *Del. Ch.* 185, where the statute was invoked by no less an authority on our statute law, than Judge Hall, who within a decade was chosen to codify for the first time, and unaided, the statute law of the State. It was recognized by no less an authority on equity law and practice than Chancellor Ridgely, as being in full force, he merely holding in that case that it did not sustain the particular point made.

The right to file a bill in equity against an executor for the recovery of a legacy was unquestioned,and was habitually recognized in this State between the time of the Colonial Act of 1764 and the Act of 1829. Where the question was whether a legacy was charged on the lands, the suit was, of course, necessarily brought in the Court of Chancery, but disregarding all such suits in the earlier ·Chancery Reports, many cases are found in which the bill was filed to recover legacies payable out of the personal estate.

The following may be considered all the relevant cases.

In *West and Wife and Mary Turner's Admr. vs. Evans, Adm'x.,* 1 *Del. Ch.* 122, the bill was filed on behalf of two residuary legatees, Caty West and Mary Turner's Adm'r. Caty West and Mary Turner, deceased, were the children of Riley Ake, and Lemuel West, the husband of Caty West, was joined as complainant.

The defendant's intestate was executor of the will and also guardian of the legatees. Before the filing of the bill a suit at law had been brought by the complainant West and

wife on the guardian bond given by the defendant's intestate. No suit had been brought on the guardian bond for Mary Turner, deceased.

The bill was filed to recover the residue of the personal estate of Riley Ake, deceased, which was bequeathed to his daughters, Caty and Mary, and also to recover rents and profits of their lands, which went into the hands of Eli Evans, the defendant's intestate, as their guardian.

No question whatever was raised and no doubt suggested as to the jurisdiction of the Court in such case, but on application of the solicitor for the respondent, Chancellor Ridgely entered an order requiring that West and wife should be put to their election whether to proceed in this suit or at law on the guardian's bond.

The complainants having elected to proceed on the guardian's bond, the bill was dismissed touching the matters of the guardianship, and with such costs against the complainants as had accrued in relation to matters of the guardianship.

In *Kirkwood vs. Mitchell, Adm'r.*, 1 *Del. Ch.* 130, a bill in equity was filed to recover a legacy and the respondent demurred, assigning for cause, *inter alia,* "that the complainant hath a remedy at law." The Chancellor was of opinion that the legatee might sue, in this Court, the personal representative of the executor who had received assets of the testator sufficient to pay the legacy.

The demurrer was over-ruled and the respondent ordered to answer, and this order was affirmed at the June Term, 1820, of the High Court of Errors and Appeals.

Afterwards the case came to a hearing before the Chancellor at the March Term, 1821.

In *Killen, et al. vs. Adams Ex'r.*, 1 *Del. Ch.* 184, above referred to, a bill in equity was filed to recover from the respondent as executor a legacy of Fifty Dollars bequeathed to each of the complainants to be paid within one year after his decease. The respondent filed a plea that no tender had been made of security to refund in case of deficiency of assets as

provided by the statute in a suit at law for a legacy. 1 *Del. Laws*, 410, *sec.* 6. The case came before the Chancellor on the plea, and Judge Hall, for the respondent, insisted that the statute which requires, in a suit at law for a legacy, that security be given or tendered to refund in the event of deficiency of assets, should be followed in a Court of Chancery; that Equity follows the law and adopts its principles in relation to the same subject.

Chancellor Ridgely said, "Were the Act of Assembly to regulate the proceedings in this Court, it would defeat the powers of the Court; for in all cases, where the security was given according to the Act, the Court would be obliged to decree a payment, without the power of imposing any terms, however proper, just as a court of law would be. Already, the Court may compel a complainant to give security to refund, or to indemnify the executor, and it is not necessary to adopt by analogy any new power or authority under the Act. That Statute applies strictly to cases at law, and gives the courts of common law a jurisdiction which they did not possess, but which this Court possesses more amply than is given by the Act to courts of law. By the Stat. 2 Geo. 2, c. 23, sec. 23, an attorney cannot bring an action unless he has delivered his bill one month; but he may take out a commission of bankruptcy for fees, while his bill is under taxation. The reason, Lord Eldon says, is that a commission of bankruptcy, being a prompt remedy, the object would be defeated by waiting a month. 15 Ves. Jr. 479, 480, 487, 489. To him the remedy in this Court being more complete, an adoption of the Statute would narrow the power of the Court, so that in all cases complete justice might not be done."

The plea was over-ruled and the defendant ordered to answer.

In *St. James' Church vs. Walker, Adm'r.*, 1 *Del. Ch.* 284, the bill was filed for a legacy and the case was heard on bill, answer and proofs. The point principally discussed by the Chancellor in his opinion was relative to the effect of a foreign nuncupative will, and the probate thereof, but no question

was suggested with respect to the jurisdiction of the Court in such cases.

The cases I have cited were decided during the period between the enactment of the statute of 1764 and that, of 1829, but in 1871, in *Wingate vs. Parsons, et al. Ex'rs.*, 4 *Del. Ch.* 117, the bill was filed by the husband and wife against the executors of the wife's father to recover a legacy to her.

In that case, which was argued by the late Judge Cullen and the late Attorney General Moore, Chancellor Bates delivered an elaborate opinion upon the particular questions raised, but the jurisdiction of the Court in such cases was not questioned either in the argument or opinion.

This review of our own statutes and decisions manifestly settles the question of jurisdiction beyond the possibility of a doubt, so that the first cause of demurrer must be over-ruled.

The second cause of demurrer my examination of the question has determined me to sustain, but I did not consider that this conclusion relieved me of the necessity of carefully considering and passing upon the first cause of demurrer, because it goes to the jurisdiction, and, manifestly, it is incumbent upon the Court to determine a question of jurisdiction whenever raised, whether other objections to the bill are sustained or not.

Furthermore I have been at great pains to examine the statutes of both the State and the Colony, as well as the decisions of this Court from the beginning of our reports, because in this case the question of jurisdiction raised involves the effect of legislation upon the common law jurisdiction of this Court, and the mutual relations of the several jurisdictions of the courts of law and equity in this State.

The second ground of demurrer is for defective parties, in that neither Richard Caldwell, *cestui que trust*, of Daniel Caldwell, deceased, nor any personal representative of the said Richard Caldwell, is named as a party, and it is on this ground alone that the demurrer must be allowed.

It can hardly be seriously questioned that Richard Caldwell, the *cestui que trust*, is a necessary party, if living, and, if he be dead, that the fact should be alleged and his legal representatives be joined as respondents.

The case of *Farmers' Bank vs. Polk, et al.*, 1 *Del. Ch.* 167, was the case chiefly relied upon by the counsel for complainant. It was there held that although the rule is that all persons materially interested should be parties to the suit, yet "if some of the persons interested reside out of the jurisdiction of the Court, or cannot for any other reason be brought before the Court, and the fact is charged, that forms an exception. An impossibility cannot be required."

In the present case, however, the single allegation of the bill on this point, is that since the time of the first deposit on account of Daniel Caldwell, trustee for Richard Caldwell, there has been found no proof of the existence of said Richard Caldwell. Assuredly, this is not sufficient to take the case out of the well founded and well settled rule of courts of equity, that all parties interested in the subject matter must be brought before the Court, and it certainly is not such an allegation as would bring it within the principle of the exception formulated by Chancellor Ridgely, in *Farmers' Bank vs. Polk, supra.*

With regard to the third and last cause of demurrer, that the complainants have no cause of action, because the property in question did, on the death of the *cestui que trust*, escheat to the State, it is sufficient to say that the point made by the complainants' counsel that, in order that property should escheat to the State, it is necessary that the last owner should die intestate, and without heirs, or any known kindred Rev. Code (1893) p. 620, is obviously well taken, since not only does no such affirmative allegation appear in the bill, but such an allegation would be inconsistent with the whole tenor of the bill and all its allegations with reference to the said Richard Caldwell.

Inasmuch as I shall give complainants leave to amend their bill, if they so desire, it has seemed proper to pass also upon this cause of demurrer.

I shall allow the demurrer, for the second cause only, with leave to complainants to amend the bill.

On December 8, 1896, the complainants not electing to amend their bill, a decree was entered allowing the demurrer with costs, to be paid by the respondent out of the trust fund in his hands.