**Barbara Purse MOORE, Plaintiff,**

v.

**C. Edward GRAYBEAL, Sr., M.D., Mrs. C. Edward Graybeal a/k/a Ruth Graybeal, Milford Memorial Hospital, Bank of Delaware, and Wilson O. McCabe, Register of Wills, Defendants.**

**Civ. A. No. 86–252–JJF.**

United States District Court, D. Delaware.

Oct. 2, 1987.

Donald W. Booker, Wilmington, Del., for plaintiff.

Walter L. Pepperman, II, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants Graybeal, Milford Memorial Hosp. and Bank of Delaware.

James A. Fuqua, Jr., Fuqua & Graves, Georgetown, Del., for defendant McCabe.

## OPINION

FARNAN, District Judge.

Jean L. Purse died testate in the State of Delaware on January 4, 1986. A will dated July 24, 1984, was thereafter delivered to the Register of Wills for Sussex County. This will, having been proved in accordance with the laws of Delaware, was admitted to probate by the Register of Wills on January 16, 1986. On that day, the Bank of Delaware ("Bank") filed a petition for Letters Testamentary and has since been appointed Executor of the Estate. Pursuant to its statutory duty under 12 Delaware Code § 1905(a), the Bank filed an inventory of the Estate in the office of the Register of Wills on April 17, 1986. On August 1, 1986, plaintiffs, Barbara Purse Moore and her children, filed a complaint in this Court against the beneficiaries of the Estate of Jean L. Purse. Also named as defendants in this suit are the Bank of Delaware, in its capacity as Executor of the Estate, and Wilson O. McCabe, the Register of Wills of Sussex County, in his official capacity. But for the suit now pending before the Court, it appears the Executors are prepared to settle the Estate of Jean L. Purse and distribute the assets of the Estate in accordance with the terms of her 1984 will.

Plaintiffs' Complaint alleges, among other things, that plaintiffs are residents of Colorado related by marriage to Jean L. Purse. Apparently, in 1979 Jean L. Purse executed a will that bequeathed the substantial residue of her estate to the Bank of Delaware, to be held in trust for the benefit of the plaintiffs. However, the 1984 will, referred to above, amends the 1979 will and leaves the residue of the estate to Dr. C. Edward Graybeal and the Milford Memorial Hospital.

The Complaint alleges that for several years preceding her death in 1986, Jean L. Purse suffered from cancer. As a result, she was ill, infirm, and often hospitalized at the Milford Memorial Hospital during the ten year period leading up to the execution of the 1984 will. During those years, her treating physician was Dr. C. Edward Graybeal. Plaintiffs' predicate the claimed invalidity of the 1984 will upon the theory that, because of the drugs prescribed and administered by Dr. Graybeal, the competency of the testatrix was undermined, leaving her particularly susceptible to the undue influence that Dr. Graybeal, the Hospital, and Mrs. Ruth Graybeal allegedly exerted over her while she was subject to their care and treatment.

The plaintiffs, eschewing the statutory scheme Delaware provides for review of a will, have petitioned this Court for relief. Specifically, plaintiffs ask the Court to assess against Dr. and Mrs. Graybeal, the Milford Memorial Hospital, and the Bank of Delaware damages amounting to $975,-000, the approximate value of the Estate of Jean L. Purse, for the harm done plaintiffs by the undue influence allegedly exerted on the testatrix by those defendants. Plaintiffs further request an Order restraining the Bank of Delaware from distributing any of the Estate's assets to either the Graybeals, or the Milford Memorial Hospital. Plaintiffs then request that I set aside the later will and reinstate the 1979 will. In the alternative, plaintiffs' Complaint indicates that plaintiffs are prepared to forego the above-mentioned relief, provided the Court: (1) Orders and directs that the assets and property of Jean L. Purse be distributed in accordance with the 1979 will; (2) awards the plaintiffs two million dollars in punitive damages against the Graybeals, the Milford Memorial Hospital, and the Bank of Delaware; and (3) directs the Register of Wills to obey any Order this Court may make regarding the distribution of the assets of Jean L. Purse.

Now pending before the Court is Defendants' Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b). The defendants have moved to dismiss the Complaint for the following reasons: (1) the Court lacks jurisdiction over the subject matter of the Complaint; (2) the Complaint fails to state a claim upon which relief can be granted; and (3) the plaintiffs have failed to join indispensible parties under Federal Rule of Civil Procedure 19. Plaintiffs original Complaint named as defendants only Dr. and Mrs. Graybeal, the Milford Memorial Hospital, the Bank of Delaware, and Wilson O. McCabe, the Register of Wills. After those defendants moved to dismiss the Complaint, plaintiff moved to amend the Complaint, adding her children as plaintiffs, and joining as defendants those beneficiaries identified in the 1984 Will who were not named in the original Complaint. The Court will assume, without deciding, that plaintiffs' Amended Complaint meets the requirements of Rule 19, and will test defendants' Motion to Dismiss against the parties and allegations contained in plaintiffs' Proposed Amended Complaint.

## DISCUSSION

This case addresses the power of a federal court, sitting in diversity, to entertain jurisdiction over cases concerning the probate or annulment of the probate of a will. It is by now a well-settled proposition that a federal court will not assume jurisdiction over a petition whose object is to avoid a will or set aside its probate. *Case of Broderick's Will*, 88 U.S. (21 Wall.) 503, 509, 22 L.Ed. 599 (1874). Our lack of jurisdiction over matters probate in nature stems from the original grant of equity jurisdiction conferred upon the courts of the United States by the Judiciary Act of 1789, Ch. 20, § 11, 1 Stat. 78, which mirrors the equity jurisdiction then residing in the English Court of Chancery. *Broderick's Will*, 88 U.S. (21 Wall.) at 510–14; *Conover v. Montemuro*, 477 F.2d 1073, 1101 (3rd Cir. 1973). At that time, issues relating to the probate of wills and the administration of estates were matters within the exclusive jurisdiction of the ecclesiastical court and, that being the case, such matters were not encompassed by the Judiciary Act's conferral of jurisdiction upon the federal courts. *Dragan v. Miller*, 679 F.2d 712, 713 (7th

Cir.1982) (citing *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946)).

The case law emanating from both the United States Supreme Court and the lower federal courts establishes the proposition that, since actions to set aside a will or its probate or to administer the estates of decedents *in rem* are not subjects within the ordinary cognizance of a court of equity because they are purely statutory in nature, they likewise fall outside the equitable jurisdiction of the federal courts. *See, e.g., Sutton v. English,* 246 U.S. 199, 205, 38 S.Ct. 254, 256, 62 L.Ed.2d 664 (1918); *Eyber v. Dominion Nat'l Bank of Bristol Office,* 249 F.Supp. 531, 533 (W.D. Va.1966). Probate is a proceeding *in rem* that exists solely by virtue of a state's statutory authorization of the right of its citizens to make wills. The probate proceeding itself exists merely to effectuate the will. *Ellis v. Davis,* 109 U.S. 485, 497, 3 S.Ct. 327, 334, 27 L.Ed. 1006 (1883).

■■■ As noted above, the probate of a will or the administration of a decedent's estate are not subjects within the cognizance of a court of equity. It therefore follows that a state court of general equity jurisdiction is without power to probate a will or administer an estate unless that power has been expressly conferred upon the court by statute. Similarly, the federal courts would lack that power unless conferred on state courts of equity. But where a state has given the proper parties a right to bring an *inter partes* action to set aside a will or its probate, a federal court sitting in that state will, under limited circumstances, enforce the remedies provided by the state if the requirements of diversity jurisdiction are satisfied. *Sutton v. English,* 246 U.S. at 205, 38 S.Ct. at 256; *Farrell v. O'Brien,* 199 U.S. 89, 110, 25 S.Ct. 727, 733, 50 L.Ed. 101 (1905); *Dragan v. Miller,* 679 F.2d 712, 715 (7th Cir.1982). A federal court's jurisdiction over such actions is limited by the meaning attributed to the phrase *inter partes.* In *Farrell v. O'Brien,* the· Supreme Court fixed the meaning of the term as follows:

... the words referred to must relate only to independent controversies *inter partes,* and not to mere controversies which may arise on an application to probate a will because the state law provides for notice, or to disputes concerning the setting aside of a probate, when the remedy to set aside afforded by the state law is a mere continuation of the probate proceeding, that is to say, merely a method of procedure ancillary to the original probate, allowed by the state law for the purpose of giving to the probate its ultimate and final effect. We say the words action or suit *inter partes* must have this significance, because unless that be their import it would follow that a state may not allow any question to be raised concerning the right to probate at the time of the application, or any such question thereafter to be made in an ancillary probate proceeding without depriving itself of its concededly exclusive authority over the probate of wills. This may be readily illustrated. Thus, if a state law provides for any form of notice on an application to probate a will and authorizes a contest before the admission of the writing to probate, then it would follow, if the words suit or action *inter partes* embrace such a contest, the proof of wills, if contested by a citizen of another State or alien, would be cognizable in the courts of the United States and hence not under the exclusive control of the state probate court. Again, if a state authorized a will to be proved in common form, that is, without notice, and allowed a supplementary probate proceeding by which the probate in common form could be contested, then, again, if such a contest be a suit *inter partes* it would also be of Federal cognizance.

*Farrell v. O'Brien,* 199 U.S. at 111, 25 S.Ct. at 734.

With this definition in mind, the Court must determine whether the laws of the State of Delaware permit the courts of the State to provide the relief requested in plaintiff's Complaint in an action wholly independent of the original probate proceeding or ancillary exercise of probate jurisdiction. If the statutes do permit such an

action then the federal court would also have the power to exercise diversity jurisdiction over the matter. *Farrell,* 199 U.S. at 111, 25 S.Ct. at 734.

Delaware law provides that the probate process is triggered by the filing of a last will and testament with the Register of Wills in the County where the decedent resided. Del.Code Ann. Title 12 § 1301 (1974). Thereafter, the will is to be proved before the Register with whom it was filed. *Id.* at § 1303(a). Before the will is proved, the Delaware statutory scheme provides a procedure through which a caveat against the allowance of an instrument as a will may be brought. This procedure requires the caveator(s) to post bond with the State, whereupon the Register must set a time for a hearing on the caveat, and provide notice to all parties interested in the proceeding. *Id.* at § 1308. Of critical relevance to the instant case, the Delaware statutes then provide a proceeding for review of a will after it has been admitted to probate. Delaware Code Ann. Title 12 § 1309(a) provides:

> (a) Any person interested who shall not voluntarily appear at the time of taking the proof of a will, or be served with citation or notice as provided in § 1303 of this title, shall, at any time within 6 months after such proof or after delivery to the Register of Wills of self-proved will, have a right of review which shall on his petition be ordered by the Court of Chancery; but unless the petitioner or petitioners shall, within 10 days after such review shall have been ordered by the Court, give bond to the State, jointly, and severally if more than 1 petitioner, with such sureties and in such sum as the Court determines, conditioned for the payment of any and all costs occasioned by such review which may be decreed against such petitioner or petitioners, such petition shall be considered as abandoned and shall be dismissed and proceedings may be had in all respects as though no such review had been ordered. Upon such review there shall be the same proceedings as upon a caveat, and the allowance of the will and granting of letters may be affirmed or the will rejected and the letters revoked.

Del.Code Ann. tit. 12 § 1309(a) (1979). Finally, § 1571 provides that an appeal may be taken to the Court of Chancery from the Register "exercising jurisdiction touching the grant or revocation of letters, the ordering of further bond or removal of an executor or administrator, but his act or sentence in any of these particulars shall not be called in question *except before him or on appeal."* (Emphasis added.)

■ It is the Court's opinion that these provisions of the Delaware statutes contemplate a will contest only before the Court of Chancery which, through its Clerk, the Register of Wills, has either admitted the will to probate or has rejected the application for probate. *Cf. Farrell,* 199 U.S. at 114, 25 S.Ct. at 735. Moreover, the statutory sections mentioned above are an essential part of the probate proceeding, and do not create an independent cause of action distinct from the probate. In other words, the statutory scheme in Delaware appears not to allow an *inter partes* action, but rather confines will contests to the original probate proceeding, and any ancillary proceedings, such as Review under § 1309, which are designed to give the probate its ultimate and final effect.

The case law of Delaware confirms this conclusion. As early as 1825, the Delaware Chancery Court stated that "A probate, until it is annulled or reversed, is conclusive; and no evidence can be received against it. It cannot be set aside in any court of law or equity, on any collateral matter; but, if it is to be questioned, it must be upon an appeal." *St. James' Church v. Walker,* 1 Del.Ch. 284, 290 (Del. Ch.1825). Similarly, in *Delaware Trust Co. v. McCune,* 32 Del.Ch. 113, 80 A.2d 507 (1951), in a suit brought by the Executor of an estate for instructions, a defendant sought to use the proceeding to attack a codicil to a will that had previously been admitted to probate. The Executor then moved to strike the defense on the ground that the Chancery Court had no jurisdiction to review the probate of a will or a codicil. In granting the Executor's motion to

strike, the Chancellor noted: "There is to be found in the Constitution and the statutes of this state no provision conferring upon the Court of Chancery jurisdiction in such matters. This has been indirectly recognized by the refusal of this court to permit a collateral attack upon the probate of a will or codicil." *Id.* 80 A.2d at 510. (Citations omitted.)

Finally, in *Anthony v. Harris,* 34 Del.Ch. 166, 100 A.2d 229 (1953), then Chancellor Seitz considered an action for specific performance of a contract for the sale of real estate, in which the defendant resisted specific performance on the ground that the plaintiffs did not have valid title under a will that had previously been admitted to probate. Plaintiff's motion to strike those portions of the answer challenging the validity of the will was granted, since, as the Chancellor noted, "The very basis for the attack here, viz., the doubt as to the authenticity of the handwriting, was a matter for the exclusive consideration of the Register's Court and, if appealed, the Orphan's Court. This Court has held that it will not permit what amounts to a collateral attack upon the probate of a will." *Id.* 80 A.2d at 510.

While the jurisdiction of the Chancery Court has changed since these cases were decided, *see, Criscoe v. Derooy,* 384 A.2d 627 (Del.Ch.1978), it remains clear that in Delaware there can be no attack upon the validity of a will by any method other than Caveat and Review, as provided in the Delaware Statutes. *Id.* at 630. The purpose behind both § 1309 and § 1310 is to "permit the prompt and orderly administration of estates." *Criscoe,* 384 A.2d at 629. The provisions under § 1309 and § 1310 allow for and in fact command a prompt review process; they do not in any way confer original jurisdiction to determine the validity of a will in the state courts. The relief requested in plaintiffs' Complaint necessarily attacks the probate of the 1984 will. It follows then that in light of *Farrell v. O'Brien* and this Court's interpretation of Delaware law this Court has no jurisdiction to entertain this action. Accordingly, defendants' Motion to Dismiss is granted.

An Order shall be entered consistent with this Opinion.