ALBERT C. WALL, as substituted administrator, &c., in place of Arthur P. Heintze, &c.,

*v.*

AMERICAN SMELTING AND REFINING COMPANY et al.

[Submitted February 5th, 1919. Decided March 4th, 1919.]

Where a debt, to secure which an intestate gave a pledge, had its *situs* in New York, where there is primary administration, and none of the things pledged are in New Jersey, and the pledgee may be sued in New York, the ancillary administrator in New Jersey is not entitled to the things pledged.

On bill, &c.

*Mr. Albert C. Wall,* solicitor *pro se,* with whom was *Mr. Franklin Bien* (of the New York bar), for the complainant.

*Messrs. Treacy & Milton (Mr. John J. Treacy),* for the American Smelting and Refining Company.

*Mr. Albert I. Drayton,* for the Miners Smelting Company.

*Mr. Gilbert Collins,* appearing specially, as *amicus curiæ,* for Mr. Fullerton, the primary administrator.

GRIFFIN, V. C.

This bill is filed by an ancillary administrator to impress a trust upon certain stocks, bonds and a royalty contract entered into with the Silver King Coalition Company (hereinafter called the Silver Company), pledged by the intestate to the American Smelting and Refining Company (hereinafter called the American Company), and to have it declared that he succeeded to the ownership thereof, subject to the lien of the pledgee.

F. Augustus Heintze, the pledgor, died at Saratoga Springs, New York, on November 14th, .1914, intestate, and on the 25th day of November, 1914, his sister Mrs. Fleitman was appointed administratrix by the surrogate of Saratoga county, New York, and duly qualified.

The American Company is a corporation of New Jersey, with authority to transact business in the State of New York, and is transacting business therein.

The stocks and bonds in question were issued by corporations created under the laws of states other than New York or New Jersey. These, together with the royalty agreement with the Silver Company, a corporation of Nevada, were pledged and delivered to the American Company in the city of New York to secure loans, the last pledge being made about March 10th, 1914.

The stocks, bonds and royalty agreement, since the date of the pledge (excepting certain bonds which had been for a short time in the west in a reorganization scheme), were continuously kept in the State of New York, and are still there, and, since the date of the pledge, have at no time been physically in New Jersey.

Proceedings were taken before the surrogate of Saratoga county to remove Mrs. Fleitman as administratrix, and she was so removed by an order dated August 23d, 1916.

Edwin Gould, as a judgment creditor in upwards of $1,000,-000, initiated the proceedings about November, 1914, which resulted in her removal.

On March 16th, 1916, a petition was presented praying that the administratrix file her account. ›

At this time it is quite apparent that Mrs. Fleitman was satisfied that she would be removed; thereupon, Mr. Arthur P. Heintze, the brother of Mrs. Fleitman, procured waivers for Mrs. Fleitman as guardian of the intestate's infant son, and as administratrix, and also that of another brother, dated March 21st, 1916, and, on March 27th, 1916, presented them to the surrogate of Hudson county with an application to be appointed ancillary administrator, and he was so appointed.

Mr. Arthur Heintze somewhat advised and assisted his sister in her administration affairs. He is a member of the bar of the State of New York.

In his forty-first finding of fact the surrogate of Saratoga county found that she had inventoried certain stocks and bonds which correspond to those described in the bill, but the number in the inventory is in excess of that in the bill. This finding also states the number of stocks and bonds pledged. And in his forty-second finding he finds that she did not account for these securities, claiming that they were the property of the Miners Smelting Company, a corporation of the State of Maine.

She did not inventory or disclose the beneficial interest in the Silver Company royalty agreement (finding No. 26) until after the hearing on March 1st, 1916.

On April 4th, 1916, Mr. Heintze, as administrator, filed his bill in this court ostensibly for the purposes above stated; whereas, it is reasonably deducible from the facts that he was endeavoring to procure the administration of these properties in New Jersey in order to avoid the lien of the Gould judgment, to the end that the claims of the Western Development Company, a corporation of Arizona (which represents his, A. P. Heintze's, creditors, and of which he is president), and Mrs. Ruth Noyes Heintze, his wife, a resident of Long Island, might share with Mr. Gould in the distribution. Accordingly, in order to sustain his appointment as administrator, the claims of the Western Development Company, for part of its alleged debt, were assigned to the United Copper Company, a corporation of New Jersey, in December, 1916, more than eight months after the bill was filed, which latter company presented its claims to Mr. Heintze, as administrator, who endorsed them "Filed, Dec. 22, 1916;" and the claim of Mrs. Heintze for part of her alleged debt was also in December, 1916, assigned by her to the United Copper Company, which presented its claim to Mr. Heintze, who endorsed it "Filed, Dec. 22, 1916."

The Assets Development Company, a corporation of New Jersey, also presented a claim to Mr. Wall, as substituted administrator, on July 22d, 1918. Mr. Arthur P. Heintze is president of this company, and made the proof. This claim was assigned by one Calvin O. Geer, a citizen of New Jersey, who was in the employ of the intestate in his lifetime and was intimately associated with corporations in which the Heintzes were

interested, and in a number of which he, Geer, held office. This claim consists of a stock note, dated New York, April 28th, 1909, in the sum of $10,000, payable on demand, upon which the following endorsement appears: "May 11 '09.  Rec'd from F. A. H. $6000 on within note—$1500 on sale of collateral. Pay, July 11, 1918, Assets Development Co or order.  C. O. Geer."

Mr. Geer also filed with Mr. Wall, on June 21st, 1918, a claim for part of his salary as employe of intestate for the month of October, 1907, $175.

The property described in the bill and the above alleged creditors are the only properties or creditors asserted by the complainant to be within the State of New Jersey.

An application was made by Mr. Fullerton (who was appointed by the surrogate of Saratoga county, New York, in the stead of Mrs. Fleitman) to the orphans court of the county of Hudson for the removal of Mr. Heintze as administrator, and the court did remove him, and appointed Mr. Wall and Mr. Fullerton as substituted administrators in his stead.  From this decree an appeal was taken to the prerogative court, which sustained the orphans court in its removal of Mr. Heintze, but vacated the appointment of Mr. Fullerton, thus continuing Mr. Wall as sole substituted administrator.

Mr. Heintze, as administrator, took out an order to limit creditors on September 27th, 1916; and, on June 28th, 1917, a decree was entered barring creditors.

The American Company filed an answer in lieu of a plea, raising, substantially, three objections to the bill, viz.:

1. That the appointment of Mr. Heintze as administrator by the surrogate of Hudson county was illegal, null and void; and the orphans and prerogative courts were without jurisdiction to appoint or continue substituted administrator or administrators.

2. That the appointment was procured by fraud.

3. That there were and are no assets or creditors of the intestate in New Jersey.

In considering objections 1 and 2, it may be presumed that the subject-matter of these objections, in a degree, at least, was considered by the orphans court and prerogative court, by whose

decrees Mr. Wall was made and continued substituted administrator. The prerogative court had full jurisdiction of the subject-matter. The decree was signed by the ordinary. I should, therefore, hesitate to consider the question of jurisdiction, and, in effect, undertake to sit on appeal from such decree. It is not necessary, however, to pass upon this question, because the case may be disposed of under the third objection.

Upon the death of the intestate the title to this property vested in the primary administrator; the property was physically in the State of New York; the pledgee, while a corporation of New Jersey, had authority to transact business in New York, and was actually doing business therein, and was therefore liable to be sued in the courts of that state; the debt to secure which the pledge was given had its *situs* in New York, and the *siti* of none of the things pledged are in New Jersey. Under such circumstances, it seems quite clear that the ancillary administrator is not entitled to their possession. *Pisano* v. *Shanley, 66 N. J. Law 1 (7)*; *Banta* v. *Moore, 15 N. J. Eq. 97*; *In re Election of Cape May, &c., Navigation Co., 51 N. J. Law 78*; *Merrill* v. *New England Insurance Co., 103 Mass. 245.*

In *Dietz's Case (1886), 41 N. J. Eq. 284,* where testator died a resident of New Jersey, with stocks, bonds and the like located in New York, in the possession or under the control of two of the respondents, the orphans court, in a contest touching the validity of a will, ordered these two respondents to turn over to the administrator *pendente lite,* appointed by said court, the securities in their possession belonging to the testator, and to give access to the safe of the testator to the administrator, so that the contents might be taken into the administrator's possession. The ordinary, in affirming the decree, said: "It is argued that the court had no jurisdiction to make the order. It had jurisdiction of the subject-matter and of the parties. Speaking generally, the order was a direction (it was an authorization also) to pay and deliver over property of the estate to the person entitled by law to the custody of it. There is no conflict of jurisdictions. The order directed the parties to do nothing which it was not their plain duty to do without it."

The distinction between the *Dietz Case* and the present is

quite apparent. In the former, the administration in New Jersey was primary; and the title to the property, although outside of this state, was vested in the administrator appointed here; and there was no conflict of jurisdiction, in this, that apparently there was no administrator in the city of New York. Here, however, the ancillary administration is in New Jersey, with no right to administer property unless it can be taken within this state. It is quite clear that this court could not lawfully make an order that the property mentioned in the bill be brought within the State of New Jersey to be administered (it being made to appear that there is primary administration in New York, where the assets or the evidence thereof are located); yet this is substantially the only form of decree which would aid the administrator here. Any decree made by this court declaring that, as between the estate of the intestate and the Miners Smelting Company, no trust is impressed upon the stocks, bonds, &c., in favor of the estate, would have no force and effect in the State of New York where the primary administration exists and the property is physically situated, as there is no privity between the primary and ancillary administrators. *Pisano* v. *Shanley, supra;* 11 R. C. L. § 531 note 11.

A decree will be advised dismissing the bill.