EDWARD W. TERRY, Former Public Administrator for the County of St. Louis, State of Missouri, as Administrator with the Will annexed of the Estate of John Walter Stull, deceased,

*vs.*

PHILIP B. STULL, FLORENCE STULL, DOROTHY E. STULL, EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, and HERCULES POWDER COMPANY, a corporation of the State of Delaware.

*New Castle, July* 29, 1933.

*James R. Morford,* of the firm of Marvel, Morford, Ward & Logan, for complainant.

*Robert H. Richards,* of the firm of Richards, Layton & Finger, for moving defendants.

THE CHANCELLOR: 1. As to the motion for a cost bond, no opposition has been interposed. *Rule* 105 of this court provides that the defendant, on motion and affidavit, may have an order for security for costs where the bill is filed by a non-resident. I do not find in the file, however, the prescribed affidavit. Upon its being supplied, the order for security for costs will be entered.

2. The motion, under this head of it, is predicated on the view that a foreign executor or administrator has no authority to maintain a suit for the recovery of personal

assets of his decedent located in this jurisdiction, unless he first causes his letters to be recorded and security given as provided in *Article* 5 of *Chapter* 98, of the *Revised Code of* 1915, whenever said recording and security are insisted upon by the defendant.

The article of the *Code* in question consists of three paragraphs which are as follows:

"3404. *Sec.* 71. FOREIGN LETTERS; WHEN PRODUCED, DULY CERTIFIED, RECEIVED AS COMPETENT AUTHORITY TO ACT; RECORDING AND BOND IN CASE OF SUIT, OR OF CREDITORS, IN THIS STATE; AMOUNT OF BOND; CONDITION OF:—Letters testamentary, or of administration, granted in any other State, and produced under the seal of the office, or Court, granting the same, shall be received in this State as competent authority to the executor, or administrator, therein named; but in such case, if the deceased be indebted to an inhabitant of this State in a sum not less than twenty dollars, the executor, or administrator, before he shall recover judgment in Court, shall cause such letters to be recorded in the Register's office in one of the Counties, and shall also, with sufficient surety, or sureties, to be approved by the Register, become bound to the State in a joint and several bond, in a penalty double the best estimate of the personal estate of the deceased in this State, with condition to be void, if he shall truly account for all the personal estate of the deceased in this State, which shall come to his knowledge, and faithfully administer and distribute the same according to law.

"3405. *Sec.* 72. STAY OF PROCEEDINGS OR REFUSAL TO PAY, UNTIL RECORDING AND BOND:—The Court in which there is any action by such executor, or administrator, may, in any case, stay the proceedings until the letters are recorded and security given; and any person in this State, having any personal estate of the deceased, may refuse to pay or deliver the same to the executor, or administrator, until the letters are recorded and security given; but a payment, or delivery, without such duty being performed, shall be good.

"3406. *Sec.* 73. JUDGMENT NOT REVERSED FOR WANT OF RECORDING OR BOND; EXCEPTION; STAY OF PROCEEDINGS:—A judgment shall not be reversed, nor set aside, as irregular, on the ground that letters have not been recorded, nor security given as aforesaid, unless objection to the judgment shall have been expressly made on that

ground and overruled; but the Court may stay proceedings on the judgment until the letters are recorded and security given."

In *St. James' Church v. Walker, Adm'r.*, 1 *Del. Ch.* 284, Chancellor Ridgely stated the law to be that "letters of administration granted in one State or Government are not sufficient to maintain an action in another, unless it is in virtue of some statute or positive law." This expression is in accord with the general rule on the subject. 4 *Schouler on Wills, Executors and Administrators* (6th *Ed.*) § 3506, *page* 2806; 1 *Woerner's American Law of Administration* (3rd *Ed.*) § 160, *page* 558. Practically all, if not all, of the states have enacted statutes governing the matter. These statutes appear to be of three types, viz., (1) those which refuse recognition to a foreign administrator under any circumstances, (2) those which accord recognition to foreign administrators under certain conditions, and (3) those which permit foreign administrators to bring and maintain suits generally without any other conditions than such as would apply to a non-resident plaintiff. The first appears to be the most numerous class.

The statute law of this State, which is quoted above, allows suits to be brought by foreign executors and administrators under the limitations therein set forth, and falls in the second class just stated.

In *Deringer's Adm'r. v. Deringer's Adm'r.*, 5 *Houst.* 416, 1 *Am. St. Rep.* 150, the Court of Errors and Appeals, in speaking of the sections of the code above set out (then *Sections* 46, 47, 48, *Chapter* 89, *Revised Code*, 1874), remarked that the law "recognizes the foreign administrator upon the mere production of his commission duly authenticated under the seal of the office or court by whom it was issued, and at once invests him with authority to represent the deceased in the same manner as if he had been originally appointed by a register in this State; and it is only upon the happening of certain contingencies

that. he will be compelled to take any proceedings of a public or judicial nature in order to confirm his authority."

The first sentence of *Section* 3404 clearly justifies the statement that the foreign letters are to be received as fully and amply in this State as though granted here. The necessity that the letters be supplemented by something more or that the authority they confer be confirmed, as the Court of Errors and Appeals expressed it, can arise only upon the happening of "certain contingencies." The subsequent provisions of the article in which that section appears set forth those contingencies.

We are here concerned with the contingencies in relation to suits by the foreign administrator. *Section* 3404 is very plain to the effect that if the decedent was indebted to an inhabitant of this State in a sum of twenty dollars or more, before the foreign administrator shall recover judgment, he shall cause his letters to be recorded and give security in double the amount of the best estimate of the personal estate of the decedent located in this State. This section is traceable to *Section* 2 of the Act found in 1 *Del. Laws, Chapter* 27, enacted by the Colonial Assembly in 1721. The preamble to that act shows plainly that the recording of the letters and the giving of security were originally for the protection of resident creditors. The act of that year contained none of the provisions now found in *Sections* 3405 and 3406 of the present *Code* (1915).

But the original act underwent modification and enlargement. On February 12, 1829, the Legislature enacted a comprehensive Act Concerning the Probate of Wills and the Administration of Personal Estates of Deceased Persons. The act repealed the former act of 1721. *Section* 20 of the *Act* of 1829 covered the subject of foreign letters, and it embodies practically all that is now found in the three sections of the present code quoted above as *Sections* 3404, 3405 and 3406. As enacted *Section* 20 of the *Act* of 1829 read as follows:

"Section 20. And be it further enacted, That letters testamentary, and letters of administration granted in any other State or Territory of the United States, and produced under the seal of the office or court granting the same, shall be received in this State as competent authority to the executor or administrator, therein named, but in such case if the deceased be indebted to any inhabitant of this State, in the sum of twenty dollars, the executor or administrator before he shall recover judgment in any court of this State, shall cause such letters to be recorded in the office of the register of one of the counties of this State, and shall with sufficient surety or sureties, become bound to the State, in a joint and several obligation, to be with the security therein approved by the register, in a penalty double the best estimate, that can be made of the goods and chattels, rights and credits of the deceased, in this State, with condition to be void, if such executor or administrator shall truly account for all and singular the goods and chattels, rights and credits of the deceased in this State, which shall come to his possession or knowledge, and shall faithfully administer and distribute the same according to law, the court in which there is any action at the suit of such executor or administrator, may in their discretion in any case, stay the proceedings, until the letters are recorded and security is given as aforesaid, and any person in this State, having any goods or chattels, rights or credits belonging to such deceased, may refuse to pay or deliver the same to such executor or administrator, until the letters are recorded and security is given as aforesaid; but delivery or payment without the letters being recorded, or security being given shall be good. A judgment shall not be recovered or set aside as irregular, on the ground that letters have not been recorded nor security given as aforesaid, unless objection to the judgment shall have been expressly made on that ground and over ruled, but the court may stay proceedings on the judgment until the letters are recorded and security is given."

The first sentence of that old *Section* 20 is a long and exceedingly poorly constructed one. Judge Hall, in his authorized edition of the laws published in 1829, broke *Section* 20 into three sentences, and corrected a manifest error in the use of the word "recovered" in the last sentence thereof by changing it to "reversed." The three sentences in Hall's revision of *Section* 20 of the *Act* of 1829 are, except in a particular about to be mentioned, substantially

the three sections now known as *Sections* 3404, 3405 and 3406 of the *Revised Code* of 1915, quoted *supra.*

The particular referred to is this. In one of the main clauses of the first sentence of *Section* 20 of the *Act* of 1829, it is provided that the court "may, in their discretion, in any case stay the proceedings, etc." This clause has now become almost *in hæc litera Section* 3405 of the present *Code,* except for the fact that the words "in their discretion" have been elided. These words were eliminated when the *Code* of 1852 was enacted. At the same time the other two sentences of Judge Hall's revision of the old *Section* 20 were written into that *Code* and his three sentences, with the second one altered as just stated, appeared therein as three separate sections known as *Sections* 46, 47 and 48 of *Chapter* 89. The sections thus appearing in the *Code* of 1852 were carried, as written, into the revisions of 1874 and 1893 and now appear, exactly as they did in 1852, in the *Code* of 1915 and are designated as *Sections* 3404, 3405 and 3406 respectively.

The foregoing is the legislative history of the statutory provisions upon which the defendants rely in support of their motion for a stay of the proceedings until the complainant shall have recorded his letters and given security in the amount of one million, six hundred thousand dollars, being double the value which the complainant places upon the property which he seeks to recover.

This much seems plain to me, viz., that if *Section* 3404 stood alone, the complainant could not be required to give security at any stage of the case, either immediately before or at any time after judgment, if it be true, as he alleges, that his decedent was not indebted in any amount to any inhabitant of this State. I say this for the reason that *Section* 3404 in its security requirement is operative only in case the deceased was indebted to an inhabitant of this State in at least a sum of twenty dollars. *Section* 3404 appears primarily to look to the protection of resident

creditors. The section traces a clear descent from the old *Act* of 1721 which, as I have shown, by reason of its preamble clearly sought the protection of resident creditors only. The present section varies from its original of 1721 merely in minor matters of phrasing, and in that to only a slight degree.

The defendants insist, however, that the other sections, viz., 3405 and 3406, have a special purpose of their own, separate and distinct from the purpose sought to be served by *Section* 3404. Those sections, as stated, appear first in the law of 1829, over one hundred years after the substance of *Section* 3404 had been enacted.

What purpose does *Section* 3405 seek to subserve? The defendants answer by saying its purpose is the protection of residents who have in their possession any personal property of the deceased. That section is applicable "in any case" without regard to the indebtedness of the deceased to any inhabitant as in *Section* 3404. If *Section* 3405 were confined in its applicability to the cases covered by *Section* 3404, there might be room to contend that its provisions were designed simply to supply some procedural mechanics whereby the purpose of *Section* 3404 could be effectively and expeditiously accomplished. But it is not so confined. Furthermore, its last clause has to do with cases where no suit has been brought. It gives to a resident in possession of a foreign decedent's personal property a right to withhold a delivery or not as he sees fit, until the foreign letters are recorded and the required security given. It does therefore appear that *Section* 3405 has a purpose broader than does *Section* 3404.

As to *Section* 3406, its purpose is said by the defendants to be to provide an eleventh hour measure of protection for defendants in either the class of suits to which *paragraph* 3404 relates or the broader class of suits to which 3405 relates. That would seem to be so.

While the provisions of *Article* 5 of *Chapter* 98 of the

*Code* embrace a design of protection to persons having in their possession any of the personal property of a decedent which his foreign administrator is asserting a right to recover, it is certainly not the purpose of the sections found in that article to throw any more obstacles in the way of the administrator than are reasonably necessary for the resident's protection. Yet, it seems to me, if the contentions of the defendants are accepted to the effect that a motion to stay is grantable as a matter of right immediately upon the institution of the suit, before the defendant has either pleaded or answered, cases may arise where *Section* 3405 in its practical operation would transcend its purpose of protection by turning itself, if not into a forbidding bar, at least into a highly unreasonable obstacle.

The instant case supplies an example in justification of the last remark. What is the situation? The complainant asserts a right to assets of an estimated value, he says, of eight hundred thousand dollars, and alleges that these assets are in the possession of the defendants. The defendants have not as yet admitted that any assets are or ever were in their hands which belonged to the complainant's decedent. If they admitted the fact to be as alleged, then undoubtedly *Article* 5 of the *Code* gives them the right to withhold delivery until the letters are recorded and security in the sum of twice the value, or one million six hundred thousand dollars, is given. But suppose the defendants deny that they are in possession of any assets belonging to the decedent's estate. In that case the primary fact of possession will be in dispute. An adjudication of it will be necessary. To require the complainant to give bond *in limine* in the large sum of one million six hundred thousand dollars would require him to give a bond as a condition precedent to his enjoyment of the privilege of establishing the primary fact that the assets are here and possessed as alleged. Surety on such a bond could

in all probability be obtained only from a surety company and its cost would run as high as several thousand dollars annually. That is an expense which would be so heavy as to be likely to induce a complainant not to risk incurring the hazard of an outcome of a suit which may result in a finding that the defendant never possessed any assets belonging to the decedent's estate. In that case the bond would have served no purpose of protection to the defendants in relation to the turning over of property in their possession; and inability to furnish the bond because of its burden, if the defendants in fact possessed such property, would result in defeat of the establishment of the fact and the so-called protection to the defendants would be carried to such an unreasonable extent as to supply a shield for a possible conversion of the assets, so far at least as the foreign administrator, who is given the right to sue, is concerned.

The instant case thus illustrates the unreasonable results which are inherent as possibilities if the view which the defendants take of *Section* 3405 is accepted.

The Court of Errors and Appeals in *Deringer's Adm'r. v. Deringer's Adm'r., supra,* spoke of the things which a foreign administrator must do "in order to confirm his authority," and said that these things need be done only upon the "happening of certain contingencies." Reading the three sections together the primary contingency which they contemplate as essential, is the possession in this State by an inhabitant thereof of property belonging to a decedent for the settlement of whose estate a foreign administrator has been appointed. Now if the primary fact of possession is not admitted, how can it be made to appear short of trial that that contingency of possession has happened?

The sections of the *Code* referred to reveal no purpose to protect defendants from the annoyance of suits. Leaving out of our view resident creditors, the sections look to

a protection of defendants against being forced to turn over property which they possess until the letters shall have been recorded and the security given, if demanded. That is all. The language of *Section* 3404 is to be observed. It is that the foreign executor or administrator "before he shall recover judgment, * * * shall cause," etc. It is before the point of judgment is reached, that the foreign administrator must, as expressed by the Court of Errors and Appeals, "confirm his authority" by recording his letters and by giving security. *Section* 3406, in its provision for a stay of proceedings after judgment, looks to the idea that it is the matter of compulsion of the defendant to surrender or account for goods in his possession without a previous recording and security, which was the dominant concern of the Legislature. I cannot find anything inconsistent with this thought in *Section* 3405, which is the section that the defendants particularly rely upon as warranting their motion. The last clause of that section shows plainly that it was only the protection of the resident against turning over the property in his possession without a previous recording of the letters and the giving of security, which was in the legislative mind. In none of the sections does an intent appear to exact security of the foreign administrator as a condition merely to the bringing of suit as distinguished from his right to secure possession of the assets of his decedent. The language is not such as is found in some statutes, the statute of frauds, for instance, where the phraseology is—"no action shall be brought whereby to charge," etc. I mention the phraseology of that statute in order to give point to the distinction I have just sought to draw between the maintenance of suit and the ultimate enjoyment of its favorable result.

But because the first clause of *Section* 3405 provides for a stay generally, without any immediately limiting context, the defendants take it that no limitation was

intended. That clause, however, should not be detached either from the context of the paragraph in which it appears or from the context of the other two sections. The three sections now constitute an entire article of the *Code;* and it is to be remembered that their legislative genesis shows them originally to have been thrown together in a single section, composed at first of two sentences and then of three.

Reading the three sections together, I am of the opinion that a foreign administrator is not called upon to confirm his authority by causing his letters to be recorded and by giving the specified security, until the contingency has happened upon which those requirements are exacted, that contingency being as I view it, the possession of assets by an inhabitant either admitted by him or adjudged to be in his possession by appropriate judicial proceedings. If the possession is contested and should be found against the resident defendant, time exists, if the suit be at law, between verdict and judgment, for the defendant to exact that the letters be recorded and the security given before the plaintiff "shall recover judgment;" and if it be in equity, the matter can very easily be taken care of in the decree. If judgment has been recovered without the requirements having been exacted, a stay after judgment is available under *Section* 3406.

The defendants not yet having indicated by plea or answer whether they admit the possession alleged against them, I am of the opinion the stay asked for should be denied. If they admit possession, the stay should be granted as moved. If possession is denied, I am of opinion that the cause should proceed in the regular course. It will not do to say that the complainant's allegation that the defendants possess the decedent's property should be conclusively taken as true for the purposes of the motion. The defendants may deny it. If they do, the court cannot then say, short of hearing, that the contingency has happened.

The language of *Section* 3405 in its stay provision is not phrased in mandatory terms. It is, "the Court may stay proceedings." Originally the language was, "the court may, in their discretion * * * stay the proceedings." The elimination of the words "in their discretion" is stressed by the defendants as indicating that the court has no discretion in the matter, and that a stay is demandable by the defendants as a matter of right. But even if the language had always been as it is now, the defendants argue that notwithstanding its permissive manner of expression, it must nevertheless be interpreted as mandatory in character. In support of this view they cite the familiar rule laid down by Chancellor Kent in *Newburgh & C. Turnpike Road Co. v. Miller,* 5 *Johns. Ch.* (*N. Y.*) 101, 9 *Am. Dec.* 274, and quoted with approval by this court in *Stoeckle v. Armstrong,* 8 *Del. Ch.* 150, 38 *A.* 1059, and in *Cantor, et al., v. Sachs, et al.,* 18 *Del. Ch.* 359, 368, 162 *A.* 73, as follows:

"In respect to statutes, the rule of construction seems to be, that the word 'may' means 'must' or 'shall' only in cases where the public interest and rights are concerned, and where the public or third persons have a claim, *de jure*, that the power should be exercised."

That of course is a settled rule of construction. It is a rule that is a subsidiary to and formulated in aid of the application of the general one, which is, that all construction must be such as seeks the discovery of the legislative intent. That "may" can in certain circumstances be interpreted as "must" is undoubted; and the converse holds true. In 59 *C. J., Page* 1080, *Par.* 635 (5) it is stated that while generally "may" is permissive merely and "must" is mandatory, yet they are used interchangeably in statutes and without regard to their literal meaning; and that in "each case (they) are to be given that effect which is necessary to carry out the intention of the legislature as determined by the ordinary rules of construction."

I need not, however, pursue this branch of the defendants' argument, because if it be conceded that the court has no discretion in the matter of a stay when it is moved at the proper stage, yet as I view Section 3405 in connection with the entire article in which it has its setting, the contingency upon which a right to a stay is predicated has not yet been shown to have happened, and so the proper stage for the motion has not yet been reached.

The motion for a stay will therefore be denied. Let an order be prepared accordingly.