COCA-COLA INTERNATIONAL CORPORATION, a corporation of the State of Delaware,

*vs.*

THE NEW YORK TRUST COMPANY, a corporation of the State of New York, as Temporary Administrator of the Estate of Julia M. Hungerford, deceased, and JULIAN RILEY and HUGHES SPALDING, as Executors of the Estate of Julia M. Hungerford, deceased.

*New Castle, May* 16, 1938.

*Hugh M. Morris* and *Ivan Culbertson,* for complainant.

*Aaron Finger,* of the firm of Richards, Layton & Finger, and *Dan MacDougald* and *James A. Branch,* both of Atlanta, Ga., for Julian Riley and Hughes Spalding, as executors of the Estate of Julia M. Hungerford, deceased.

*Clarence A. Southerland,* of the firm of Ward & Gray, (*Baldwin, Todd & Young,* of New York City, of counsel), for New York Trust Co., temporary administrator of Estate of Julia M. Hungerford, deceased.

THE CHANCELLOR: When the bill in this case was filed and until recently, viz., on May 7, 1938, the date of a stipulation entered into between the parties, the only possible claimants to the stock, so far as the pleadings show, were the Georgia executors on the one hand and the New York temporary administrator on the other. The stipulation just referred to, however, shows that the will has been proved recently in New York and an administrator *c. t. a.* has been appointed in that jurisdiction. The appointment of the temporary administrator was upon the theory of an intestacy. The appointment of the administrator *c. t. a.* was upon the theory of a testacy. The authority of the temporary administrator, whatever it was, has been supplanted by that of the administrator *c. t. a. In re Shonts' Estate,* 109 *Misc.* 276, 178 *N. Y. S.* 762.

It follows, therefore, that the defendant, the temporary administrator, has no right to the stock. This is so not because of any superior virtue in the right of the Georgia executors, but because the office in virtue of which the temporary administrator in New York asserted its right has been superceded in all respects by an administrator *c. t. a.* appointed in the same New York jurisdiction.

The cause is before the court on a motion by the Georgia executors upon their answer in the nature of a bill of complaint for a decree notwithstanding the answer of the temporary administrator. When such a motion is made in the ordinary case it is under *Rule* 44 of this court. Under that rule the Chancellor may in a proper case in his discretion decline to decide the cause upon such motion.

I am of the opinion that I should decline to decide the cause on the pending motion, notwithstanding the tempo-

rary administrator has now, since the motion was made, become stripped of all authority under the law of its appointment. I take this view because to do otherwise might result in awarding the stock to the Georgia executors when the facts at present before the court raise a serious doubt, if they do not constitute a complete denial, of the right of the Georgia executors to administer the stock as against the administrator *c. t. a.* recently appointed in New York. Should this court, because the temporary administrator has no right to the stock, proceed to adjudicate the right to it in favor of the Georgia executors, when it knows of the existence of the New York administrator *c. t. a.,* without affording an opportunity to the latter as successor to the administration rights of the temporary administrator to assert its claim? Whether it can assert its claim in the pending suit, I do not now undertake to say. At all events, as the motion gives the cause somewhat of the posture of a bill for specific performance, it seems to me that the discretion that courts of equity exercise in such cases might well suggest that the relief, even if finally granted, ought certainly not to be granted at this stage. If as the cause proceeds nothing is done to bring the New York administrator *c. t. a.* into the case as a party, if that can be done, then the matter of granting relief to the Georgia executors might present itself in another light, though on that I abstain from expressing any opinion.

I suggested a moment ago that under the facts now before the court there is a serious doubt, if not an insurmountable obstacle, confronting the right of the Georgia executors to possession of the stock. The facts I refer to are that a New York court of appropriate jurisdiction has adjudicated the domicile of Mrs. Hungerford to have been in New York at the time of her death. Not only so, for the purposes of the pending motion the Georgia executors admit that her domicile was in fact in New York. Their motion under *Rule* 44 admits for the purposes of the

motion all the facts set forth in the adversary's answer; and the answer avers as a fact that Mrs. Hungerford was a resident and domiciled in New York at the time of her death.

On these facts, the case at present is therefore one where personal property located in this State belonging to the estate of a decedent admittedly domiciled in New York is sought to be recovered for administration in the State of Georgia. Where that is the case, it is very much to be doubted whether a Delaware court will direct property located here to be transmitted for administration to a jurisdiction which is foreign to the domicile of the decedent, even in the absence of opposition from the domiciliary jurisdiction. At all events, it would seem that the court here ought not to act in a summary way in favor of a foreign administration when a representative of the domicile has been seeking to assert an opposing claim and has been defeated only because a representative of higher dignity in the domicile has succeeded to all the rights of administration.

The domiciliary representative of a deceased person is entitled to receive and administer all the personal estate of the deceased wherever found, subject to the right of a foreign state to administer property within its borders for the protection of its own citizens. That is a proposition of practically uniform acceptance in this country. It impliedly inheres in the language of the Court of Errors and Appeals of this State in *Deringer's Adm'r. v. Deringer's Adm'r.*, 5 *Houst.* 416, 431, 1 *Am. St. Rep.* 150, where that court said :

"The great rule in the settlement of estates is, that the personal property is distributed by the law of the domicile, and that prevails where it does not conflict with the *lex rei sitae.*"

In *Wilkins v. Ellett, Adm.*, 9 *Wall.* 740, 19 *L. Ed.* 586, the Supreme Court of the United States, after stating the general principle to be long settled that

"* * * the personal estate of the deceased is to be regarded, for the purposes of succession and distribution, wherever situated, as having no other locality than that of his domicil * * *," proceeded further to say that "the original administrator, therefore, with letters taken out at the place of the domicil, is invested with the title of all the personal property of the deceased for the purpose of collecting the effects of the estate, paying the debts; and making distribution of the residue, according to the law of the place, or directions of the will, as the case may be.

" * * * if any portion of the estate," says the court, "is situated in another country he [the domiciliary representative] cannot recover possession by suit without taking out letters of administration from the proper tribunal in that country, as the original letters can confer upon him no extraterritoiral authority. The difficulty does not lie in any defect of title to the possession, but in a limitation or qualification of the general principles in respect to personal property by the comity of nations, founded upon the policy of the foreign country to protect the interests of its home creditors. These letters are regarded as merely ancillary to the original letters, as to the collection and distribution of the effects; and generally are simply made subservient to the claims of the domestic creditors, the residuum being transmitted to the probate court of the country of the domicil, for the final settlement of the estate."

The rule which the cited case announces, that if suit is necessary to recover personal property in a jurisdiction foreign to that of the domicile of the deceased, ancillary letters must be taken out in the foreign jurisdiction, is not applicable in Delaware because of statutory provisions to the contrary. *Terry v. Stull*, 19 *Del. Ch.* 412, 168 *A.* 251. But the principle remains unimpaired, subject of course to local law, that the effects found in this jurisdiction of a non-resident decedent are generally to be administered according to the law of, and by the representative appointed in, the jurisdiction of the domicile.

Now in the instant case it appears that two jurisdictions have appointed testamentary representatives of the estate of the deceased, each on the theory that she was domiciled therein. The answer of the New York temporary administrator avers that the deceased was domiciled in New York at the time of her death. The motion of the Georgia executors for a decree notwithstanding this answer admits the truth of that averment.

The Georgia executors insist, however, that the ques-

tion of domicile was formally adjudicated in Georgia as being in that State, in proceedings to which all the heirs at law were parties, and that under the full faith and credit clause of the constitution of United States (*U. S. C. A. Const., Art.* 4, § 1) and the act of congress passed in pursuance thereof (28 *U. S. C. A.* § 688), such judgment is conclusive of the fact, even against the admitted truth to the contrary. Full faith and credit are, to be sure, to be given to the Georgia judgment. Like faith and credit are also to be given to the New York judgment which adjudges the domicile to have been in New York. But the judgment in each case is to be given effect only to the extent jurisdiction existed to render it. The full faith and credit clause does not preclude an inquiry into the jurisdiction of the court in which the judgment is rendered, over the subject matter, or the parties affected by it, or into the facts necessary to give such jurisdiction. *Mitchell, Vance & Co. v. Garrett, Ferris & Co.,* 5 *Houst.* 34; *Thornmann v. Frame,* 176 *U. S.* 350, 20 *S. Ct.* 446, 44 *L. Ed.* 500.

The appointment of executors in Georgia as well as the appointment of the administrator *c. t. a.* in New York, were judgments essentially *in rem.* They were final and conclusive as to property of the decedent located in the appointing jurisdiction; and property located in this jurisdiction is not within the subject matter upon which either of those judgments operates. *Overby v. Gordon,* 177 *U. S.* 214, 20 *S. Ct.* 603, 44 *L. Ed.* 741.

It might be that if any of the parties who were cited to appear and did appear in the proceedings to probate the will in solemn form in Georgia were to seek elsewhere to re-litigate against the executors there appointed the question of the Georgia domicile, the executors who conducted the Georgia proceedings might plead the Georgia judgment as an estoppel against them, on the theory that in that situation the Georgia judgment had the effect on the contesting party of one *in personam,* though on this I ex-

press no opinion. But that contention cannot be made in this case for the reason that the New York administrator was neither a party to the proceedings nor in privity with such party.

The Georgia executors appear to lay great stress on *Matter of Cornell's Will,* 267 *N. Y.* 456, 196 *N. E.* 396, 101 A. L. R. 1502, as sustaining their position that the adjudication by the Georgia courts that Mrs. Hungerford was domiciled in that state, is conclusive against the New York administration. I think they misconceive the purport of that case. All that was determined in the *Matter of Cornell's Will, supra,* was that the Surrogate's Court in New York had the discretion to refuse to pass on the question of the domicile of a deceased non-resident who left personal property located in New York, where the contest was between personal representatives of the deceased appointed in two different jurisdictions, in each of which the personal representative there appointed claimed the deceased was domiciled. That question, viz., whether there is discretion in the matter, is not under debate here. In the course of its opinion the Court of Appeals in New York clearly recognized the propriety of an adjudication in New York of the question of the decedent's domicile as between two foreign jurisdictions if in the discretion of the Surrogate's Court such an adjudication ought to be made.

And so, here, likewise I conclude that there is power in the appropriate Delaware tribunals to determine, so far as the property located here is concerned, where the deceased was domiciled at the time of her death to the end that the local effects may be sent to the seat of domiciliary administration.

In face of the present admission that the decedent was a resident of New York and lawfully domiciled therein at the time of her death, I am of the opinion that the stock in dispute should not now be ordered to be transferred to

the executors appointed in Georgia and that the motion for a decree notwithstanding answer should be denied.

Order accordingly.