THOMAS KINSEY BOWLES, heir at law and next of kin of LUCY WORTHAM JAMES, deceased, late of the State of Rhode Island, on his own behalf and on behalf of all the heirs at law and next of kin of said decedent,

*vs.*

THE R. G. DUN-BRADSTREET CORPORATION, a corporation of the State of Delaware, RALPH HAYES, WILLIAM GREENOUGH and FULTON TRUST COMPANY OF NEW YORK, individually, and as Executors and Trustees of a purported Last Will and Testament of LUCY WORTHAM JAMES, deceased, and purported codicils thereto.

*New Castle, April* 18, 1940.

*Harry Rubenstein,* for complainant.

*Robert H. Richards* and *Aaron Finger,* of the firm of Richards, Layton & Finger, for The R. G. Dun-Bradstreet Corporation.

*Hugh M. Morris,* for Ralph Hayes, individually; he, also, appeared specially for Ralph Hayes, as executor and trustee.

THE CHANCELLOR: This case is before the court on general and special demurrers to the complainant's bill; and on a motion to vacate the service of process on Ralph Hayes, as executor and trustee under the last will and testament, and the codicils thereto, of Lucy Wortham James, deceased.

The R. G. Dun-Bradstreet Corporation is a corporation of the State of Delaware, and the complainant seeks injunctive and other relief against some of the defendants, with respect to the stock issued by that corporation to Lucy Wortham James during her life time. The relief sought against The Dun-Bradstreet Corporation is, however, merely of an injunctive nature. Mrs. James died in the City of New York on January 19th, 1938, but was then domicil-

ed in, and a legal resident of the City of Newport, Rhode Island. Prior to her death, she had executed a paper, purporting to be her last will and testament, and two codicils thereto, in which she named the Fulton Trust Company of New York, William Greenough, also of New York, and Ralph Hayes, of Wilmington, Delaware, as executors and trustees. The decedent left a considerable personal estate; some $33,000 of which was located in the City of New York. On February 3rd, 1938, her will and the codicils thereto were filed for probate in the Surrogate's Court in the City and County of New York. On November 12th, 1938, they were duly probated as such by that court, and letters testamentary thereon were granted to the said Fulton Trust Company, William Greenough and Ralph Hayes. It appeared from the probate proceedings that the decedent was a resident of the City of Newport, Rhode Island, and that such proceedings were, therefore of an ancillary nature. At the time of the death of the said Lucy Wortham James she was the record owner of 51,672 shares of common stock and 7,036 shares of the cumulative preferred stock of The R. G. Dun-Bradstreet Corporation, one of the defendants, which said stock had a value in excess of $2,000,000.00. The certificates evidencing that stock were then in the possession of William Greenough, in New York City, and were subsequently delivered by him to the said Fulton Trust Company, also one of the executors named in the will of the decedent. On June 16th, 1939, the executors of Lucy Wortham James filed an intermediate account on her estate in the Surrogate's Court in the City and County of New York. The complainant, one of the alleged heirs at law and next of kin of Mrs. James, has made repeated efforts to have her original will transmitted to Rhode Island for probate in that State, but, when this bill was filed, had not succeeded in having that done, and the only administration on her estate at that time was in the Surrogate's Court in New York. An application for the grant of letters on her estate in Rhode Island was, however, pending. On September 1st, 1939, the New

York Surrogate's Court entered an order directing the executors of Lucy Wortham James to "proceed in the usual course with the administration of the estate of the said decedent in New York and proceed to sell the common capital stock of The R. G. Dun-Bradstreet Corporation," which, as has already been stated, is a corporation of the State of Delaware. All of these facts are alleged in the bill.

The bill also alleges:

1. That the executors of Lucy Wortham James "have and are continuing to dispose of said stock and are proceeding with the administration of the said decedent's entire estate as though a primary original domiciliary administration existed in the State of New York."

2. That the executors of Lucy Wortham James are about to sell and transfer The R. G. Dun-Bradstreet Corporation stock in question "in accordance with the order of the New York Surrogate's Court."

3. That such sale by the executors named in the will of the decedent will render any decree, that may be entered by the court of Rhode Island, in which State Lucy Wortham James was domiciled at the time of her death, a mere nullity, and will result in irreparable injury to the complainant.

Any and all relief sought against the defendants relates to shares of stock issued by The R. G. Dun-Bradstreet Corporation, which stood in the name of Lucy Wortham James at the time of her death, and which were, therefore, an asset of her estate; but it does not appear that the stock in question, or any part thereof, was bequeathed to the compainant by the will of Mrs. James, or by any of the codicils thereto.

It is elementary law that the complainant's interest in the subject-matter of a bill in equity must clearly appear from its allegations. No such interest, or injury to his rights, appear here; and that omission is fatal to his case. 1 *Whitehouse Eq. Pr.*, § 89.

The complainant's theory, apparently, is that as the will of the decedent was not probated in Rhode Island, the State of her domicile, she is "deemed to have died intestate," as to property located in any State, other than New York; and the bill so alleges. Applying this theory, it, also, alleges that title to all personal property belonging to Lucy Wortham James, at the time of her death, vested, by operation at law, in her heirs and next of kin "subject only to the rights and interests with respect to creditors of said decedent, if any, of an administrator appointed by an appropriate court of the State of Rhode Island." Had the decedent actually died intestate, the complainant, as one of her next of kin, would have had some interest in her personal property located in this State. But, in view of the fact that she left a will, which was subsequently probated, as such, in the State of New York, no such claim can be made.

But even if it be conceded, for the sake of argument, that it appears from the allegations of the bill that the complainant has some right or interest in the stock in question, there are other reasons why he is not entitled to the relief prayed for against the defendants, or any of them, including The R. G. Dun-Bradstreet Corporation.

It is not denied that stock, issued by a corporation, is personal property. *Section* 2048, *Revised Code* 1935. Nor is it denied that the real situs or location of stock, issued by a Delaware corporation, is in this State. In this connection, our statute provides:

"For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this Chapter, or otherwise, shall be regarded as in this State." *Rev. Code* 1935, § 2105.

The complainant contends that the will of Lucy Wortham James should have been probated in the State of Rhode Island, the place of her domicile, and letters thereon granted in that State; that the probate proceedings and let-

ters testamentary granted in the State of New York were of a mere ancillary or subordinate nature which gave the executors, who qualified there, authority to administer on property located in that State, but gave them no right to administer on property located in the State of Delaware. He further contends that, applying that rule, the Dun-Bradstreet Corporation could not recognize or act on transfers of its stock made by the New York executors of the decedent.

The statement is frequently made that, as a general rule, the ancillary representative of a deceased person has title to, and the right to take possession of, and to administer on all of her personal estate, wherever located, including shares of stock issued by a corporation created in another State. Such statements are always qualified, however, by the further statement that that general rule is ordinarily subject to the right of a foreign state to require property located within its borders to be administered on there, in order to protect the rights of its citizens. *Coca-Cola International Corp. v. New York Trust Co.*, 22 *Del. Ch.* 344, 2 *A. 2d* 290; *Coca-Cola International Corp. v. New York Trust Co.*, 24 *Del. Ch.* 163, 8 *A. 2d* 511; *Wilkins v. Ellett*, 9 *Wall.* 740, 19 *L. Ed.* 586; *Beale Conf. Laws*, § 471.2. The general theory, on which this statement is based, seems to be that, as both for the construction of a will and the determination of its validity with respect to personal property, the law of the domicile of the decedent is ordinarily controlling, and, independent of any will, for the purposes of succession and distribution, the personal estate of the decedent, wherever situated, is regarded for all practical purposes as having no location other than that of his domicile. *Deringer's Adm'r. v. Deringer's Adm'r.*, 5 *Houst.* 416, 1 *Am. St. Rep.* 150; *Coca-Cola International Corp. v. New York Trust Co.*, 22 *Del. Ch.* 344, 2 *A. 2d* 290; *Goodrich Conf. Laws*, 412; *Beale Conf. Laws*, § 469.1. But, taken literally, it seems that any such general statement, with respect to the title of a domiciliary representative of a deceased person, will not bear a careful analysis in all of its aspects. *Beale Conf. Laws*, §§

471.1, 471.3; see, also, *Goodrich Conf. Laws*, 411, *etc.* In fact, the strict legal rights and powers of an executor or administrator of a deceased person are confined to the territorial limits of the state appointing him, and this is true whether he be a domiciliary or an ancillary representative. *Goodwin v. Jones*, 3 *Mass.* 514, 3 *Am. Dec.* 173; *Wall v. American Smelting & Refining Co.*, 90 *N. J. Eq.* 469, 107 *A.* 63; *Wolfe v. Bank of Anderson*, 123 *S. C.* 208, 116 *S. E.* 451; *Goodrich Conf. Laws*, § 409; *Beale Conf. Laws*, §§ 465.3, 471.5; 37 *Harv. Law Rev.* 264. Within those limits, there is little or no difference between their absolute rights and powers. Any right accorded them to bring suit in another state; to collect money due the decedent from persons residing there, without suit, and to execute proper releases therefor; to take possession of property located in such state, including shares of stock in a corporation organized there, and to sell and transfer any and all property so acquired, seems to involve questions of conflict of laws (*Goodrich Conf. Laws*, 409), and, apparently, depends entirely on the policy of the foreign state, and the extent to which comity will be carried there. *Dolan v. Anthony*, 51 *R. I.* 181, 152 *A.* 873; *Putnam v. Pitney*, 45 *Minn.* 242, 47 *N. W.* 790, 11 *L. R. A.* 41; *Wolfe v. Bank of Anderson*, 123 *S. C.* 208, 116 *S. E.* 451; *Deringer's Adm'r. v. Deringer's Adm'r.*, 5 *Houst.* 416, 1 *Am. St. Rep.* 150; *In re Chadwick's Will.* 80 *N. J. Eq.* 471, 85 *A.* 266; *Story's Conf. Laws*, § 512; see, also, *Beale Conf. Laws*, § 471.3. In this connection, *Section 3868* of the *Revised Code of* 1935, in part, provides:

"Letters testamentary, or of administration, granted in any other State, and produced under the seal of the office, or Court, granting the same, shall be received in this State as competent authority to the executor, or administrator, therein named; * * *."

When there are creditors, in this State, of a decedent who was domiciled in another state, there are other applicable provisions in the same statute, but it is not contended that any such question, or any kindred question, relating to the rights of any citizens of the State of Delaware, is in-

volved here. See *Terry, Adm'r., v. Stull,* 19 *Del. Ch.* 412, 168 *A.* 251.

The policy of a state on a particular question may sometimes be declared by its statutes, and sometimes by its decisions. *Skillman v. Conner,* 8 *W. W. Harr.* (38 *Del.*) 402, 193 *A.* 563; see, also, *Deringer's Adm'r. v. Deringer's Adm'r.,* 5 *Houst.* 416, 1 *Am. St. Rep.* 150.

The language of *Section* 3868 of the *Revised Code* is broad and comprehensive:

"Letters * * * granted in any other State * * * shall be received in this State as competent authority to the executor, or administrator, therein named."

In effect, invoking the principles of *Skillman v. Conner* and *Deringer's Administrator v. Deringer's Administrator,* *supra,* the defendants, therefore, contend that the New York executors of Mrs. James should be accorded the right to take possession of, and to administer on either tangible or intangible property belonging to her estate, and located in the State of Delaware. *Restat. Conf. Laws,* §§ 472, 472*e,* 474, 474*b,* 477, 477*b; Beale Conf. Laws,* § 477.1.

In most jurisdictions, it seems to be conceded that, independent of statute, a personal representative, whether domiciliary or otherwise, cannot bring suit, in that capacity, in another state, whether for the collection of a debt due the decedent in that state, or for some other purpose. *Johnson v. Powers,* 139 *U. S.* 156, 11 *S. Ct.* 525, 35 *L. Ed.* 112; *Terry, Adm'r., v. Stull,* 19 *Del. Ch.* 412, 168 *A.* 251; *Goodrich Conf. Laws,* 408, 409; *Story's Conf. Laws,* § 513; see, also, *Restat. Conf. Laws,* 474*d.* This has been the law of England since an early date. *Tourton v. Flower,* 3 *P. Wms.* 369, 24 *Eng. Rep.* 1105; *Goodrich Conf. Laws,* 409. But, because of state comity and the general provisions of our statute, it has been held that, where the rights of citizens of the State of Delaware are not affected thereby, a domiciliary representative of a person who died in another state may bring suit in this State to collect a debt due the decedent.

*Deringer's Adm'r. v. Deringer's Adm'r.,* 5 *Houst.* 416, 1 *Am. St. Rep.* 150; see, also, *Terry, Adm'r., v. Stull,* 19 *Del. Ch.* 412, 168 *A.* 251.

But, independent of any statutory provision, it has been held, in most cases, that when a debt due a decedent's estate in some state other than his domicile, has been voluntarily paid in that state to his domiciliary representative, such payment is valid and binding on his estate, if there are no local creditors, and no ancillary representative has been appointed there. *Wilkins v. Ellett,* 9 *Wall.* 740, 19 *L. Ed.* 586; *Morrison v. Hass,* 229 *Mass.* 514, 118 *N. E.* 893; *Hutchins v. State Bank,* 12 *Metc.,* (*Mass.*) 421; *Selleck v. Rusco,* 46 *Conn.* 370; *Goodrich Conf. Laws,* 413; *Beale Conf. Laws,* §§ 471.3, 475.1, 481.1; 10 *A. L. R.* 276; see, also, *Marcy v. Marcy,* 32 *Conn.* 308; *Denny v. Faulkner,* 22 *Kan.* 89; *Restat. Conf. Laws,* § 474.

Even if the domiciliary representative has not the strict legal right to collect such a debt, or to give a valid receipt or discharge therefor, in most cases no interested person could be materially injured if such collections were treated as assets of the decedent's estate, and accounted for accordingly. See *Beale Conf. Laws,* §§ 474.1, 481.1. Under similar circumstances, precisely the same rule, applied in *Wilkins v. Ellett,* 9 *Walls.* 740, 19 *L. Ed.* 586, and in kindred cases, has been applied to voluntary payments made by a debtor, residing in a state, other than the domicile of the decedent, to an ancillary representative appointed in some other state. *Wilkins v. Ellett,* 108 *U. S.* 256, 2 *S. Ct.* 641, 27 *L. Ed.* 718.

In this connection, it may also be pertinent to point out, that where practice requires a specific order for distribution, in most cases a court will direct an ancillary representative of an estate to pay the balance shown by his account, after the payment of the amounts due local creditors, to the domiciliary executor, or administrator (*Doland v. Anthony,* 51 *R. I.* 181, 152 *A.* 873, 874; *Restat. Conf. Laws,*

§ 522; *Goodrich Conf. Laws,* § 412; *Beale Conf. Laws,* §§ 522.1, 522.2) ; but this procedure is purely a matter of practical convenience and expediency, and may depend on the circumstances. *Id.*

In *Dolan v. Anthony, supra,* the court aptly said:

"Since the leading case of *Harvey v. Richards, Fed. Cas. No.* 6,184, 1 *Mason* 381, decided in 1818 by Justice Story, the law is well settled that an ancillary administration is not servient to that of the domicile, that one has no priority over the other, and that it lies in the discretion of the court having jurisdiction over the property to distribute the same in accordance with the domiciliary law or to transmit the assets to the jurisdiction of the domiciliary court. The only limitations upon this discretion are those imposed by the principles of comity and equity."

From the admitted facts, it appears that the New York executors of Mrs. James had possession of the certificates for the stock issued by The R. G. Dun-Bradstreet Corporation. Acting as such executors, they sold, at least, some of that stock, and transferred the certificates therefor to the purchasers; and such transfers were apparently recognized and acted on by that corporation. It is, therefore, difficult to escape the conclusion that they took possession of that stock, in so far as that was physically possible in view of its intangible nature, and administered thereon as property belonging to the decedent's estate. As questions of comity and state policy, rather than title as such, must govern this case, in view of these facts I see no reason why the acts of such executors should not be regarded as valid and binding in this State. See *Restat. Conf. Laws,* §§ 472, 474, 477 (2), 477c; see, also, *Beale Conf. Laws,* § 477.1. This conclusion is not inconsistent with *Coca-Cola International Corporation v. New York Trust Company,* 24 *Del. Ch.* 163, 8 *A.* 2d 511. In that case, executors of the decedent, to whom letters had been granted in the State of Georgia, and an administrator, appointed in the State of New York, each claimed to be the domiciliary representative of the decedent, and demanded that the certificates for shares of stock in a Delaware corporation should be issued to them, respectively. In order to

.fully protect itself, the corporation filed a bill of interpleader, and this court held that the decedent was domiciled in the State of Georgia, at the time of her death, and that the stock certificates in controversy should, therefore, be issued to the executors who had qualified in that state. A very different question is raised here. It may be better practice to probate the will of a decedent in the state of her domicile, before proving it in any other state in which she may own property; but it can hardly be said that its probate, in the first instance, in some other state is so clearly illegal on its face that it gives the executors therein named no power or authority, as such, in that state. *Morrison v. Haas,* 229 *Mass.* 514, 118 *N. E.* 893; *Beale Conf. Laws,* § 469.2; *Restat. Conf. Laws,* § 469c.

In the *Matter of Cameron's Estate,* 47 *App. Div.* 120, 62 *N. Y. S.* 187, also involved a very different question, and has no application to this case. In that case, the will of a deceased person was proved in a state, other than her domicile. Its validity in the domicilary state was subsequently questioned on an application for letters of administration in that state, and it was held to be invalid, and that the decedent had died intestate; while the validity of the will of the decedent is not and cannot be attacked in this proceeding. *Price v. Dewhurst,* 4 *My. & Cr.* 76, 41 *Eng. Rep.* 30, also involved a very different question.

But, in any aspect of this case, no irreparable injury, calling for injunctive or other equitable relief, appears from the allegations of the bill. It is not alleged that the executors propose to sell the corporate stock in question for an inadequate price, or that they threaten to misapply the proceeds of any such sale. If personal representatives should ultimately be appointed in the State of Rhode Island, and an order should be made by the New York Surrogate's Court, directing the executors, who have qualified in that state, to turn over the balance in hand, shown by their final account, to such domiciliary representatives, it does not

appear that any such order could not be complied with because of any threatened illegal act of the defendants. Nor can it be assumed that the New York Court will not in every respect abide by the law of the decedent's domicile in distributing any of her personal property that may come under its jurisdiction and control, if final distribution should be ordered in that state. *Griswold v. Kelley-Springfield Tire Co.*, 94 *N. J. Eq.* 308, 120 *A.* 324. As a general rule, property in the possession of an executor or administrator is regarded as being virtually in the custody and control of the court in which his letters were granted, and to which he must account in settling the decedent's estate; ordinarily, reasons of comity and necessity, therefore, prevent the courts of any other state from interfering with any such possessory rights, whether by suit against him in his representative capacity involving injunctive process, or otherwise. *Vaughan, et al., v. Northrup, et al.*, 15 *Pet.* 1, 10 *L. Ed.* 639; *Byers v. McAuley*, 149 *U. S.* 608, 13 *S. Ct.* 906, 37 *L. Ed.* 867; *Peck v. Jenness*, 7 *How.* 612, 12 *L. Ed.* 841; *Security Ins. Co., v. Taylor, Fed. Cas. No.* 12,607; *Goodrich Conf. Laws*, 419; *Beale Conf. Laws*, § 512.1; 24 *C. J.* 1136. If there be exceptions to that general rule in some cases where foreign representatives are in possession of property of the decedent in another state, it can only be in order to prevent an absolute failure of justice (*Beale Conf. Laws*, § 512.2; *Goodrich Conf. Laws*, 419; *Restat. Conf. Laws*, § 516); but in any event the facts of this case do not bring it within the principles of any such alleged exception. *Id.*

Under these facts, the same general rule would seem to apply that governs suits against trustees appointed in judicial proceedings in another state, to the courts of which they must ordinarily account in administering the trust. *Jenkins v. Lester*, 131 *Mass.* 355; *Perry on Trusts*, § 70; *Restat. Conf. Laws*, §§ 298, 299.

The demurrers to the complainant's bill must, therefore, be sustained, and the motion, to quash the service of process, granted.